**IN THE UNITED STATES DISTRICT COURT**
**OF THE DISTRICT OF DELAWARE**

WEYERHAEUSER COMPANY, a Washington corporation,

Plaintiff,

v.

DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company,

Defendants.

C.A. No. ___________

**COMPLAINT**

Plaintiff, Weyerhaeuser Company, by and through its undersigned counsel, files this Complaint against Defendants, Domtar Corporation and Domtar Paper Company, LLC, and alleges as follows:

**The Parties**

1. Weyerhaeuser Company is a corporation organized under the laws of the state of Washington with its principal place of business at 33663 Weyerhaeuser Way South, Federal Way, Washington 98003.

2. Domtar Corporation is a corporation organized under the laws of the state of Delaware with its principal place of business at 395 de Maisonneuve Blvd. West, Montreal, Quebec, Canada H3A 1L6. Domtar Corporation may be served with process through its registered agent, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

3. Domtar Paper Company, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 100 Kingsley Park Drive, Fort Mill, South Carolina, 29715-6476. Domtar Paper Company, LLC may be served with process through its registered agent, National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

## Jurisdiction And Venue

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Defendants by law and by contractual agreement of the parties.

6. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties also contractually agreed to venue in this District.

7. The parties contractually waived their rights to a jury trial.

## Factual Background

### Weyerhaeuser Sold its Fine Paper Business, Including the Business's Assets and Liabilities, to Domtar

8. In a transaction that closed on March 7, 2007, Weyerhaeuser sold its fine paper business to Defendants (the "Sale").

9. Weyerhaeuser accomplished the Sale, in part, by transferring its fine paper business to Domtar Paper Company, LLC, then transferring ownership of Domtar Paper Company, LLC to Domtar Corporation. These two Domtar entities are collectively referred to as "Domtar" in this Complaint.

10. Domtar Paper Company, LLC was formed by Weyerhaeuser in August 2006 specifically to hold the fine paper business being sold by Weyerhaeuser. In the Sale contracts, Domtar Paper Company, LLC is referred to as "Newco."

11. The Sale was structured to transfer from Weyerhaeuser to Domtar all assets and liabilities of the fine paper business except for assets and liabilities that were expressly retained by Weyerhaeuser in the Sale contracts.

12. The parties' Amended and Restated Contribution Agreement, dated January 25, 2007 (the "Contribution Agreement"), Section 2.01(b), required Domtar to "irrevocably assume and agree to faithfully pay, perform and discharge when due all the Newco Liabilities" not explicitly retained by Weyerhaeuser.

13. The "Newco Liabilities" assumed by Domtar were defined in Section 2.03(a) of the Contribution Agreement: "'Newco Liabilities' shall mean all obligations, liabilities and commitments of any nature, whether known or unknown, express or implied, primary or secondary, direct or indirect, liquidated, absolute, accrued, contingent or otherwise and whether due or to become due . . . arising out of or primarily relating to [the fine paper business] prior to, on or after [the Sale], excluding the Retained Liabilities, which Newco Liabilities shall include [a list that followed in Subsections 2.03(a)(i)-(xi)]."

14. The list of Newco Liabilities found in Subsections 2.03(a)(i)-(xi) is non-exclusive.

15. Under Section 9.02 of the Contribution Agreement, the word "include," as used in the Agreement, is "deemed to be followed by the words 'without limitation.'"

16. Because the "Newco Liabilities" only "include" the list found in Subsections 2.03(a)(i)-(xi), the list is non-exclusive and does not limit the breadth of the "Newco Liabilities" defined in Section 2.03(a).

17. The "Newco Liabilities" that were transferred to Domtar excluded only certain "Retained Liabilities" listed in Section 2.03(b) of the Contribution Agreement and any other liabilities explicitly retained by Weyerhaeuser elsewhere in the Sale contracts.

18. All liabilities of the fine paper business that were not explicitly retained by Weyerhaeuser were transferred to Domtar by Sections 2.01(b) and 2.03(a) of the Contribution Agreement.

**Domtar Assumed Workers Compensation Obligations Relating to the Fine Paper Business**

19. Sections 2.01(b) and 2.03(a) of the Contribution Agreement transferred to Domtar workers compensation liability arising from the fine paper business.

20. Section 2.03(a)(iv) also specifically transfers to Domtar "all Liabilities arising as a result of at any time being the owner, lessee or occupant of, or the operator of the activities conducted at, the Transferred Real Property."

21. Section 2.03(a)(vi) also transfers to Domtar "all Liabilities in respect of any suit, action or proceeding (a "Proceeding"), pending or threatened, and *claims*, whether or not presently asserted, at any time arising out of or primarily relating to the operation or conduct of the Newco Business."  (Emphasis added.)

22. Workers compensation claims asserted by current or former employees of the fine paper business constitute both *claims* arising out of or relating to the operation or conduct of the Newco business and *liabilities* arising out of any time being the owner, lessee, or occupant of, or operator of activities conducted at, the Transferred Real Property.  As such, these liabilities were specifically transferred to Domtar with the Sale.

23. Not all workers compensation liability arising from the fine paper business was transferred to Domtar in the Sale. However, Weyerhaeuser explicitly retained workers compensation liability only for a narrow category of U.S. fine paper employees.

24. The current and former fine paper employees relevant to this action fall into three categories. One category consists of fine paper employees who worked for Weyerhaeuser before the Sale, then continued to work for Domtar after the Sale ("Transferred Employees").

25. Domtar has accepted responsibility for all workers compensation claims asserted by Transferred Employees.

26. A second category consists of fine paper employees who were still employed at the time of the Sale but who were receiving workers compensation benefits and not working at the time of the Sale. These employees were specifically addressed in Section 6.09(a)(iii) of the parties' Amended and Restated Transaction Agreement dated January 25, 2007 (the "Transaction Agreement").

27. Section 6.09(a)(iii) of the Transaction Agreement states:

> Newco Employees employed in the United States who are absent from work and receiving workers compensation benefits related to such absence ("U.S. WC Newco Employees") will not become Transferred Employees until such time, if any, as they are determined by the relevant insurer to be able to return to employment and present themselves for re-employment . . . . Prior to such time, Weyerhaeuser shall retain all liability with respect to providing workers compensation benefits to U.S. WC Newco Employees to the extent the U.S. WC Newco Employees are eligible to receive such benefits.

28. The parties agree that Weyerhaeuser retained all post-Sale workers compensation liability for U.S. WC Newco Employees unless and until those employees became Transferred Employees.

29. At the time of the Sale, there were approximately 12 U.S. WC Newco Employees employed in the United States who were not at work on the date of the sale due to injury and receiving workers compensation payments. Of this group, approximately three employees ultimately returned to work for Domtar.

30. The third category of employees relevant to this action consists of all other pre-Sale fine paper employees, including those who were retired or otherwise terminated before the time of the Sale, and who never became Transferred Employees (the employees in this third category will be referred to collectively as "Retired Employees").

31. No contract relating to the Sale specifically or separately addresses workers compensation liability for Retired Employees.

32. Workers compensation liability for Retired Employees is not a Retained Liability under Section 2.03(b) of the Contribution Agreement.

33. Workers compensation liability for Retired Employees is not a Retained Liability under Schedule 2.03(b)(x) to the Contribution Agreement.

34. Workers compensation liability for Retired Employees is not a liability explicitly retained by Weyerhaeuser in any contract relating to the Sale.

35. The terms of Section 6.09(a)(iii) of the Transaction Agreement do not apply to Retired Employees because Retired Employees are not "U.S. WC Newco Employees."

36. Because workers compensation liability for Retired Employees was not explicitly retained by Weyerhaeuser as part of the Sale, that liability transferred to Domtar pursuant to the general transfer of liability in Sections 2.01(b) and 2.03(a) of the Contribution Agreement.

**Domtar Has Refused to Accept Responsibility for Workers Compensation Obligations it Assumed in the Sale**

37. In Section 4.03 of the Contribution Agreement, Domtar agreed to "indemnify, defend and hold harmless Weyerhaeuser . . . from and against any and all [losses, as defined in the Agreement], to the extent arising or resulting from . . . any Newco Liability."

38. Since the date of the Sale, Weyerhaeuser has tendered to Domtar dozens of workers compensation claims relating to Retired Employees.

39. Domtar has rejected or failed to respond to each workers compensation tender from Weyerhaeuser relating to Retired Employees.

40. Because Domtar has rejected tender of Retired Employee workers compensation claims, Weyerhaeuser has been administering, paying, and resolving Retired Employee workers compensation claims at its own expense.

41. Weyerhaeuser has been administering, paying, and resolving Retired Employee workers compensation claims in order to ensure that workers compensation obligations to Retired Employees do not go unmet.

42. The parties have been unable to resolve the workers compensation dispute since the date of the Sale, and have continued to preserve their legal rights with respect to the dispute.

43. For example, a December 21, 2009 settlement agreement between the parties, which addressed certain post-closing disputes arising from the Sale, but which did not discuss the workers compensation dispute, expressly states: "Each of the Parties reserves all rights, and grants no releases, with respect to any matter other than the Post-Closing Resolved Items as set forth herein."

44. In addition, on February 28, 2013, the parties entered a settlement agreement relating to other post-Sale disputes. In Paragraph 9 of that agreement, the Parties jointly agreed to preserve three categories of workers compensation disputes (labeled "Non-Addressed Workers Comp Claims" in the February 28 agreement) for resolution at a later date. Two of those disputes related to the administration of workers comp claims filed by Transferred Employees; the remaining category covered Retired Employees and was identified as "the administration of and liability for U.S. workers compensation claims filed by Weyerhaeuser employees who were not transferred to Domtar as part of the Sale but whose claims relate to a site or operation that was transferred to Domtar as part of the Sale." Paragraph 9 goes on to state as follows:

> The Parties intend to address issues relating to these Non-Addressed Workers Comp Claims at a later date after the Parties have finalized the population of claims to be included in a settlement. Pending the later addressing of those issues, the Parties reserve all rights with respect to the Non-Addressed Workers Comp Claims.

45. Efforts to amicably resolve Non-Addressed Workers Comp Claims have been unsuccessful.

46. From the date of the Sale through 2012, Weyerhaeuser incurred approximately $8.2 million in costs for workers compensation claims relating to Retired Employees.

47. Weyerhaeuser anticipates that claims asserted in the future by Retired Employees will likely reach or exceed $6.1 million.

48. Domtar assumed responsibility for these workers compensation costs as part of the Sale, and is obliged to indemnify and reimburse Weyerhaeuser for these costs, and any other related costs, under the Contribution Agreement.

49. Since 2012, Weyerhaeuser has continued to incur substantial costs for the administration and payment of workers compensation claims relating to Retired Employees.

**Domtar Has Not Accepted Responsibility for the Administration of Workers Compensation Claims for Transferred Employees**

50. Even though Domtar accepts responsibility for payment of workers compensation claims relating to Transferred Employees, it has not taken responsibility for *administration* of those claims.

51. Since the Sale, Weyerhaeuser has administered Transferred Employee workers compensation claims at its own expense.

52. Weyerhaeuser has been administering Transferred Employee workers compensation claims to ensure that workers compensation obligations to Transferred Employees do not go unmet.

53. Responsibility for administering these Transferred Employee workers compensation claims transferred to Domtar in the Sale.

54. The administration of Transferred Employee workers compensation claims has also been a subject of ongoing dispute between the parties, and these administrative costs were also part of the "Non-Addressed Workers Comp Claims" the parties agreed to resolve at a later date in their February 28, 2013 settlement agreement.

55. The parties have been unable to amicably resolve their dispute relating to administration of Transferred Employee workers compensation claims.

56. Weyerhaeuser has incurred significant expenses in administering workers compensation claims made by Transferred Employees.

57. Domtar has refused to reimburse Weyerhaeuser for the expenses incurred by Weyerhaeuser in administering workers compensation claims made by Transferred Employees.

58. Domtar has also refused to take responsibility for the administration of workers compensation claims made by Transferred Employees.

**COUNT I**
**(BREACH OF CONTRACT)**

59. Weyerhaeuser realleges and incorporates by reference paragraphs 1 through 58, inclusive, as if fully set forth in this paragraph.

60. Domtar has breached its contractual obligations to assume full responsibility for workers compensation liability relating to Retired and Transferred Employees.

61. Domtar has breached its contractual obligations to indemnify Weyerhaeuser for losses incurred by Weyerhaeuser in connection with workers compensation obligations assumed by Domtar in the Sale.

62. Weyerhaeuser has suffered damages as a result of Domtar's contractual breaches in an amount to be proved at trial.

**Prayer For Relief**

WHEREFORE, Weyerhaeuser asks the Court to grant Weyerhaeuser the following relief:

(a) Injunctive relief requiring Domtar to assume total responsibility for workers compensation claims made by Retired and Transferred Employees;

(b) Judgment against Domtar for damages in an amount to be proved at trial;

(c) Pre-judgment and post-judgment interest on all damages awarded;

(d) Weyerhaeuser's reasonable attorneys' fees and costs; and

(e) Such further relief as this Court deems just and appropriate.

.

January 13, 2014

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

OF COUNSEL:

Laurie Lootens Chyz
Michael J. Ewart
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
(206) 623-1745
llc@hcmp.com
mje@hcmp.com

ND: 11100.192 4838-0801-0775v3