**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation<br><br>                  Plaintiff,<br><br>      v.<br><br>DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company,<br><br>                  Defendants. | C.A. No. 14-00024-SLR |

**WEYERHAEUSER COMPANY'S ANSWERING BRIEF IN OPPOSITION TO
DOMTAR CORPORATION AND DOMTAR PAPER COMPANY, LLC'S
MOTION TO DISMISS THE COMPLAINT**

March 10, 2014

OF COUNSEL:

Laurie Lootens Chyz, WSBA #14297
Michael J. Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
(206) 623-1745
llc@hcmp.com;
mje@hcmp.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Attorneys for Plaintiff,
Weyerhaeuser Company

**TABLE OF CONTENTS**

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.    SUMMARY OF ARGUMENT .....................................................................................1

III.   STATEMENT OF FACTS ...........................................................................................2

    A.    Domtar Assumed Liabilities of the Fine Paper Business when it Purchased the Fine Paper Business from Weyerhaeuser. .............................................................2

    B.    Workers Compensation Liability Was Among the Liabilities Transferred in the Sale.............................................................................................................................3

IV.    ARGUMENT.................................................................................................................5

    A.    Domtar Assumed Workers Compensation Liability for Retired Employees...........6

        1.    Section 2.03(a) of the Contribution Agreement transfers workers compensation liability to Domtar................................................................6

        2.    The illustrative list of transferred liabilities in Section 2.03(a) does not limit Section 2.03(a)'s general transfer of liability to Domtar....................7

    B.    None of Weyerhaeuser's Claims is Barred by the Statute of Limitations. ............11

    C.    Domtar Has Breached its Contractual Obligation to Administer Workers Compensation Claims for Transferred Employees. ...............................................12

    D.    Even if Domtar's Arguments Had Merit (They Do Not), Weyerhaeuser Would be Entitled to Amend Its Complaint. ........................................................................14

V.     CONCLUSION............................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 5, 14

*Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*,
  489 A.2d 413 (Del. 1985) ............................................................................................... 12

*Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*,
  63 F.3d 262 (3rd Cir. 1995) .......................................................................................... 8, 10

*Corvel Enterprise Comp, Inc. v. Schaffer*,
  C.A. No. 4896-VCN, 2010 WL 2091212 (Del. Ch. Feb. 23, 2010) ................................ 7, 8, 10

*DCV Holdings, Inc. v. ConAgra, Inc.*,
  889 A.2d 954 (Del. 2005) .................................................................................................. 10

*E.I. DuPont de Nemours & Co. v. Medtronic Vascular, Inc.*,
  C. A. No. N10C-09-058 MMJ CCLD, 2013 WL 261415 (Del. Super. Ct. January 18, 2013)  12

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (2009)............................................................................................................. 5

*Gertrude L.Q. v. Stephen P.Q.*,
  466 A.2d 1213 (Del. 1983) .................................................................................................. 9

*McKissick v. Yuen*,
  618 F.3d 1177 (10th Cir. 2010) ................................................................................. 8, 9, 10

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3rd Cir. 2008) .............................................................................................. 14

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*,
  340 F.3d 969 (9th Cir. 2003) ..................................................................................... 8, 9, 10

*United States v. Water Supply & Storage Co.*,
  546 F. Supp. 2d 1148 (D. Colo. 2008)................................................................................. 8

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) .................................................................................................. 13

**RULES**

Federal Rule of Civil Procedure 8 ................................................................................ 2, 5, 12, 14

Federal Rule of Civil Procedure 8(a)(2) ......................................................................... 5

Federal Rules of Civil Procedure 12(b)(6)....................................................... 1, 5, 6, 14

I.    **NATURE AND STAGE OF THE PROCEEDINGS**

On January 13, 2014, Plaintiff Weyerhaeuser Company filed a Complaint against

Defendants Domtar Corporation and Domtar Paper Company, LLC (collectively, "Domtar").

Weyerhaeuser alleges that Domtar has failed to assume workers compensation obligations

transferred to Domtar when Domtar bought Weyerhaeuser's fine paper business in 2007.

Domtar moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Domtar asks the Court to dismiss the Complaint with prejudice.  Weyerhaeuser

opposes Domtar's motion, and asks that it be denied.

II.   **SUMMARY OF ARGUMENT**

1.    Under the plain language of the contracts at issue, Domtar assumed workers

compensation liability for fine paper employees who were retired or otherwise terminated before

Domtar purchased the fine paper business.  Because Weyerhaeuser was divesting itself of its fine

paper business, the transaction was structured to transfer to Domtar all fine paper assets and

liabilities except where specifically retained by Weyerhaeuser.  Weyerhaeuser did not

specifically retain liability for retired fine paper employees, so that liability was transferred to

Domtar.  The Complaint properly and sufficiently alleges that Domtar has breached its

contractual obligation to assume workers compensation liability, and that Weyerhaeuser has

incurred damages as a result.

2.    None of Weyerhaeuser's claims is barred by the statute of limitations.  As alleged

by Weyerhaeuser in its Complaint, Weyerhaeuser and Domtar have been attempting to negotiate

resolution of this workers compensation dispute, and have consistently agreed to reserve the

issue for future resolution.  The statute of limitation was thus tolled or waived by agreement, as

alleged in the Complaint.

3.      Weyerhaeuser has properly alleged Domtar's refusal to pay administrative expenses for workers compensation claims.  Rule 8 does not require Weyerhaeuser to allege the precise damages associated with Domtar's contractual breach (which is ongoing), to allege that a demand for payment was made and refused, or to have generated invoices for the costs of workers compensation administration.  Weyerhaeuser has alleged Domtar's contractual breach, and has pleaded facts more than sufficient to state a claim upon which relief can be granted.

## III.    STATEMENT OF FACTS

### A.      Domtar Assumed Liabilities of the Fine Paper Business when It Purchased the Fine Paper Business from Weyerhaeuser.

Weyerhaeuser sold its fine paper business to Domtar (the "Sale") on March 7, 2007.  (D.I. 1 ("Compl.") ¶ 8.)  The Sale was structured to transfer from Weyerhaeuser to Domtar all assets and liabilities of the fine paper business except for assets and liabilities expressly retained by Weyerhaeuser.  (*Id.* ¶ 11; *E.g.*, D.I. 4 ("Dankworth Decl.") Ex. A (Contribution Agreement) §§ 2.01-2.03.)  Accordingly, the parties' Amended and Restated Contribution Agreement (the "Contribution Agreement"), Section 2.01(b), required Domtar to "irrevocably assume and agree to faithfully pay, perform and discharge when due all the Newco[1] Liabilities" not expressly retained by Weyerhaeuser.  (Compl. ¶ 12; Dankworth Decl. Ex. A § 2.01(b).)  Section 2.03(a) of the Contribution Agreement broadly defined the "Newco Liabilities" assumed by Domtar:

> "Newco Liabilities" shall mean all obligations, liabilities
> and commitments of any nature, whether known or
> unknown, express or implied, primary or secondary, direct
> or indirect, liquidated, absolute, accrued, contingent or
> otherwise and whether due or to become due . . . arising out
> of or primarily relating to [the fine paper business] prior to,
> on or after [the Sale], excluding the Retained Liabilities,

---

[1] Weyerhaeuser accomplished the Sale, in part, by transferring its fine paper business to Domtar Paper Company, LLC, then transferring ownership of Domtar Paper Company, LLC to Domtar Corporation.  (Compl. ¶ 9.)  Domtar Paper Company, LLC (which was created by Weyerhaeuser specifically to hold the fine paper business for purposes of the Sale) is referred to as "Newco" in the Sale contracts.  (*Id.* ¶ 10.)

> which Newco Liabilities shall *include* [a list that followed
> in subsections 2.03(a)(i)-(xi)].

(Compl. ¶ 13; Dankworth Decl. Ex. A § 2.03(a) (emphasis added).)  Under Section 9.02 of the

Contribution Agreement, the word "include," as used in the Agreement, "is deemed to be

followed by the words 'without limitation.'"  (Compl. ¶ 15; Dankworth Decl. Ex. A § 9.02.)

Therefore, the Newco Liabilities transferred to Domtar "include[d] without limitation" the list of

liabilities described in subsections 2.03(a)(i)-(xi).

Immediately following the general transfer of liability in Section 2.03(a), Section 2.03(b)

specifically carved out the "Retained Liabilities" kept by Weyerhaeuser.  (Compl. ¶ 17;

Dankworth Decl. Ex. A § 2.03(b).)  The transfer of liability in Section 2.03(a) also specifically

excludes Section 2.03(b)'s "Retained Liabilities."  (Compl. ¶ 13; Dankworth Decl. Ex. A

§ 2.03(a).)  Weyerhaeuser thus kept only the Retained Liabilities specified in Section 2.03(b) and

any other liabilities expressly retained elsewhere in the Sale contracts.  (Compl. ¶ 17.)

### B.  Workers Compensation Liability Was Among the Liabilities Transferred in the Sale.

Three categories of workers compensation liability are relevant to this action.  Two of

those categories are, in one way or another, in dispute.  The first category consists of workers

compensation liability for fine paper employees who worked for Weyerhaeuser before the Sale,

then continued to work for Domtar after the Sale ("Transferred Employees").  (Compl. ¶ 24.)

Domtar "accepts responsibility for workers compensation claims asserted after the Sale by"

Transferred Employees.  (D.I. 13 ("Mot. to Dismiss") at 2; Compl. ¶ 25.)  Domtar has not,

however, accepted responsibility for administering those workers compensation claims.  (Compl.

¶¶ 50-58.)

The second category consists of workers compensation liability for fine paper employees

who were still employed at the time of the Sale but who were receiving workers compensation

3

benefits and not working at the time of the Sale.  (Compl. ¶ 26.)  Those employees were

specifically addressed in Section 6.09(a)(iii) of the parties' Amended and Restated Transaction

Agreement (the "Transaction Agreement"):

> Newco Employees employed in the United States who are absent
> from work and receiving workers compensation benefits related to
> such absence ("U.S. WC Newco Employees") will not become
> Transferred Employees until such time, if any, as they are
> determined by the relevant insurer to be able to return to
> employment and present themselves for re-employment . . . .  Prior
> to such time, Weyerhaeuser shall retain all liability with respect to
> providing workers compensation benefits to U.S. WC Newco
> Employees to the extent the U.S. WC Newco Employees are
> eligible to receive such benefits.

(Compl. ¶¶ 26-27; Dankworth Decl. Ex. B (Transaction Agreement) § 6.09(a)(iii).)  The parties

agree that, because Weyerhaeuser specifically retained liability for U.S. WC Newco Employees,

they remained Weyerhaeuser's liability unless and until they returned to work for Domtar and

became Transferred Employees.[2]  (Mot. to Dismiss at 3; Compl. ¶ 28.)

The third category consists of workers compensation liability for all other pre-Sale fine

paper employees, including those who were retired or otherwise terminated before the Sale, and

who never became Transferred Employees (collectively, "Retired Employees").  (Compl. ¶ 30.)

Workers compensation liability for Retired Employees was not among the Retained Liabilities

kept by Weyerhaeuser under Section 2.03(b) of the Contribution Agreement, and was not

retained by Weyerhaeuser anywhere else in the Sale contracts.  (Compl. ¶¶ 31-35; Dankworth

Decl. Ex. A § 2.03(b); *see* Dankworth Decl. Exs. A & B.)  Domtar nevertheless denies it

assumed workers compensation liability for Retired Employees.  (Mot. to Dismiss at 4-9.)

---

[2] At the time of the Sale, there were approximately twelve U.S. WC Newco Employees
employed in the United States who were not at work on the date of the sale due to injury and
receiving workers compensation payments.  (Compl. ¶ 29.)  Of this group, approximately three
employees ultimately returned to work for Domtar.  (*Id.*)

Since the Sale, Weyerhaeuser has tendered to Domtar dozens of workers compensation claims relating to Retired Employees. (Compl. ¶ 38.) Domtar has rejected or failed to respond to each workers compensation tender relating to Retired Employees. (*Id.* ¶ 39.) The parties have thus been unable to resolve the workers compensation dispute since the date of the Sale, but have preserved the dispute for future resolution, and have preserved their legal rights. (*Id.* ¶¶ 42-44.) For example, in settlement agreements resolving other disputes between the parties, signed in 2009 and 2013, the parties expressly reserved their rights to address other outstanding disputes in the future. (*Id.*) In the 2013 agreement, the parties specifically identified the workers compensation issues still being disputed and expressly preserved those issues for resolution "at a later date after the Parties have finalized the population of claims to be included in a settlement." (*Id.* ¶ 44.) Weyerhaeuser filed this action only after efforts to amicably resolve the workers compensation dispute proved to be unsuccessful. (*Id.* ¶ 45.)

## IV.   ARGUMENT

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." That pleading standard "*does not* require 'detailed factual allegations,'" but it does require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Courts evaluating a motion to dismiss under Rule 12(b)(6) may therefore disregard bare legal conclusions, but must still "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (2009).

Weyerhaeuser has met its burden under Rule 8. Weyerhaeuser has alleged facts showing that Domtar assumed workers compensation liability under the Sale contracts, and the contract

language supports Weyerhaeuser's interpretation.  Weyerhaeuser's allegations also show that

Domtar has breached its obligations and that Weyerhaeuser has incurred damages as a result.

This is not a case appropriate for dismissal under Rule 12(b)(6), and the Court should deny

Domtar's motion to dismiss.

### A.    Domtar Assumed Workers Compensation Liability for Retired Employees.

1.    Section 2.03(a) of the Contribution Agreement transfers workers compensation liability to Domtar.

Weyerhaeuser completely divested itself of its fine paper business by selling it to Domtar

in 2007.  (*See* Dankworth Decl. Exs. A & B.)  The Contribution Agreement between

Weyerhaeuser and Domtar was therefore structured to ensure that all assets and liabilities of the

fine paper business transferred to Domtar unless otherwise agreed.  Consistent with that

approach, Section 2.03(a) of the Contribution Agreement transferred to Domtar[3]

> all obligations, liabilities and commitments of any nature,
> whether known or unknown, express or implied, primary or
> secondary, direct or indirect, liquidated, absolute, accrued,
> contingent or otherwise and whether due or to become due .
> . . arising out of or primarily relating to [the fine paper
> business] prior to, on or after [the Sale], excluding the
> Retained Liabilities, which Newco Liabilities shall ***include***
> [a list that followed in subsections 2.03(a)(i)-(xi)].

(Dankworth Decl. Ex. A § 2.03(a) (emphasis added).)  That language is broad, and is not

narrowed by the list of transferred liabilities following it.  Under Section 9.02 of the Contribution

Agreement, the word "include" in Section 2.03(a) must be read to be followed by the words

"without limitation."  (Dankworth Decl. Ex. A § 9.02.)  Accordingly, the Contribution

Agreement transferred to Domtar all fine paper liabilities, including, *without limitation*, the

liabilities listed in Section 2.03(a)(i)-(xi).

---

[3] Under Section 2.01 of the Contribution Agreement, Domtar "irrevocably assume[d] and agree[d] to faithfully pay, perform and discharge when due all the Newco Liabilities" defined in the Agreement.  (Dankworth Decl. Ex. A § 2.01.)  Section 2.03 defines the "Newco Liabilities" transferred to Domtar.  (*Id.* § 2.03.)

The only liabilities *not* transferred to Domtar were the Retained liabilities listed in Section 2.03(b) and any other liabilities explicitly retained by Weyerhaeuser elsewhere in the Sale contracts.  (Dankworth Decl. Ex. A §§ 2.03(a), 2.03(b).)  In its Motion to Dismiss, Domtar does not contend that Weyerhaeuser explicitly retained liability for Retired Employee workers compensation claims.  (Mot. to Dismiss at 4-9.)  Accordingly, liability for Retired Employee workers compensation claims transferred to Domtar pursuant to Section 2.03(a).

> 2.   The illustrative list of transferred liabilities in Section 2.03(a) does not limit Section 2.03(a)'s general transfer of liability to Domtar.

Because Weyerhaeuser did not explicitly retain workers compensation liability for Retired Employees, Domtar claims, instead, that Section 2.03(a) was not written broadly enough to transfer that liability.  (*Id.*)  Domtar cites one of Section 2.03(a)'s subsections and focuses its attention on why, in Domtar's view, workers compensation claims do not fall within that subsection's scope.  (*Id.* at 5-7.)  The subsection Domtar cites relates to the transfer of "employment and employee benefit-related Liabilities with respect to Transferred Employees." (*Id.* a 5 (citing Section 2.03(a)(vii)).)  Domtar is focusing on the wrong language.

Subsection 2.03(a)(vii) does not limit the broad general transfer of liability in Section 2.03(a).  Section 2.03(a) transfers all fine paper liability "includ[ing] without limitation" its subsections (i)-(xi).  The list of transferred liabilities in subsections (i)-(xi) is thus illustrative only, and does not narrow the scope of the transfer contained elsewhere in Section 2.03(a).

Delaware courts read "including without limitation" language broadly.[4]  For example, in *Corvel Enterprise Comp, Inc. v. Schaffer*, C.A. No. 4896-VCN, 2010 WL 2091212, at *2 (Del. Ch. Feb. 23, 2010), the court was asked to interpret a settlement release provision that encompassed "any claims arising out of any relationship between the [parties], including but not

---

[4] The relevant contracts, the Contribution Agreement and the Transaction Agreement, are governed by Delaware law.  (Dankworth Decl. Ex. A § 9.07, Ex. B. § 9.08.)

limited to any claims or counterclaims that could have been asserted in the Pending Case

[relating to a payment dispute]."  One of the parties claimed that provision released him from a

noncompetition agreement unrelated to the settlement discussions, and the court agreed.  The

court explained: "The language of the Release is broad.  It is also very general.  When one looks

at the 'including but not limited to' language in paragraph 3, one cannot help but conclude that

the Release cannot be limited to the [settled] dispute."  *Id.*  The court found an expansive reading

of the release created no conflicts with any other provisions of the contract and held there was

"no fair way to read the [release] other than as fully encompassing the entire breadth of the

relationship between [the parties]."  *Id.* at *2-3.

Courts across jurisdictions interpret phrases such as "including without limitation" in this

way.  In *Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3rd Cir.

1995), the Third Circuit explained that, because the contract at issue contained a list "prefaced by

the phrase 'including but not limited to,'" the parties "unambiguously stated that the list was not

exhaustive."  Other courts reach the same conclusion when presented with similar language.

*E.g.*, *McKissick v. Yuen*, 618 F.3d 1177, 1185 (10th Cir. 2010) (role of phrase following

"'including but not limited to' clause . . . is to serve as an example, an illustration, a

representation of what's encompassed in the Release—not to crab or limit its plain language

indicating the parties' intent to discharge 'any and all' claims"); *Turtle Island Restoration*

*Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 975 (9th Cir. 2003) ("Congress used the

phrase 'including but not limited to' and in so doing, contemplated that the list of potential

obligations that the United States had under the Agreement was not exhausted by those listed in

the subsection."); *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D.

Colo. 2008) ("The plain meaning of 'including but not limited to' is that the term [preceding it]

is meant to include the subsequently specified examples . . . and also is meant to include other items not specified in the statute.").

Indeed, contracts and statutes all over the country would have to be rewritten if courts started interpreting "including without limitation" to actually limit what precedes it.  *E.g.*, *McKissick*, 613 F.3d at 1185 (contract); *Turtle Island*, 340 F.3d at 975 (statute).  Such an interpretation would be nonsensical, and would be tantamount to reading the "including without limitation" language out of the contract or statute being interpreted.  Courts are not empowered to change the language of contracts or statutes in that way.  *E.g.*, *Gertrude L.Q. v. Stephen P.Q.*, 466 A.2d 1213, 1217 (Del. 1983) ("Delaware follows the well-established principle that in construing a contract a court cannot in effect rewrite it or supply omitted provisions."); *Turtle Island*, 340 F.3d at 975 (court could not endorse interpretation of statute that "effectively omits the 'including but not limited to' language").

To avoid the broad language in Section 2.03(a), Domtar characterizes that language as merely the "introductory portion" of Section 2.03(a).  Mot. to Dismiss at 8.  Domtar, again, misunderstands the relative importance of Section 2.03(a) and its subsections.  The portion of Section 2.03(a) that precedes the phrase "include without limitation" is the operative portion, and the subsections that follow serve only an illustrative or exemplary function, not a narrowing function.  To borrow from the Tenth Circuit, subsections 2.03(a)(i)-(xi) were "obviously meant to put illustrative meat on the [Newco Liabilities'] bones, not to grind those bones to dust." *McKissick*, 618 F.3d at 1185 (describing effect of list following "including but not limited to" clause).

Domtar also claims subsection 2.03(a)(vii) should control because "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the

specific provision ordinarily qualifies the meaning of the general one."  (Mot. to Dismiss at 8

(quoting *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005)).)  That principle

of construction does not apply here.  First, that principle does not apply to a list following the

phrase "includes without limitation."  *E.g.*, *Corvel Enter.*, 2010 WL 2091212, at *2-3; *Cooper*,

63 F.3d at 280; *McKissick*, 618 F.3d at 1185; *Turtle Island*, 340 F.3d at 975.  Second, this is not

a case where a more specific provision *conflicts* with a general provision.

Subsection 2.03(a)(vii), describing the transfer of employment-related liabilities, does not

conflict with—and is entirely consistent with—Section 2.03(a)'s general transfer of "all

obligations, liabilities and commitments of any nature."

   The Sale contracts do, however, contain a specific provision that the parties agree

reserves a category of workers compensation liability to Weyerhaeuser.  Section 6.09(a)(iii) of

the Transaction Agreement reserves for Weyerhaeuser workers compensation liability for fine

paper employees who were still employed at the time of the Sale, but who were receiving

workers compensation and had not yet returned to work.  There were approximately twelve such

employees at the time of the Sale.  (Compl. ¶ 29.)  Domtar claims the existence of

Section 6.09(a)(iii) supports its view that Domtar assumed workers compensation liability only

for Transferred Employees:

> Because Domtar did not even assume responsibility for
> those persons who were nominally current employees at the
> time of the Sale, it is illogical to contend, as Weyerhaeuser
> does, that Domtar assumed liability for workers
> compensation benefits for employees who had already
> retired and thus also never became Transferred Employees.

(Mot. to Dismiss at 6-7.)  To the contrary, the existence of Section 6.09(a)(iii) shows that the

parties knew how to—and did—carve out workers compensation liability that would otherwise

have transferred to Domtar.  The parties' decision *not* to carve out such liability for Retired

Employees means Domtar assumed that liability under Section 2.03(a).

In sum, as alleged in the Complaint, Domtar assumed workers compensation liability for

Retired Employees as part of the Sale.  The Complaint's allegations also show that Domtar

breached its contractual obligation to assume workers compensation liability, and that

Weyerhaeuser has been damaged as a result.  Weyerhaeuser has met its burden under Rule 8.

**B.    None of Weyerhaeuser's Claims is Barred by the Statute of Limitations.**

Domtar contends that "some of Weyerhaeuser's claims" are barred by Delaware's three

year statute of limitations for contract claims.  (Mot. to Dismiss at 9.)  Domtar bases that

contention on one allegation in the Complaint:  "Since the date of the Sale, Weyerhaeuser has

tendered to Domtar dozens of workers compensation claims relating to Retired Employees."

(Compl. ¶ 38; Mot. to Dismiss at 9.)  That allegation does not say when tenders were made or

rejected, but, assuming some of Weyerhaeuser's claims accrued more than three years before the

Complaint was filed, Weyerhaeuser has preserved its legal right to pursue them.

As alleged in the Complaint, Domtar and Weyerhaeuser have tried and failed to resolve

their workers compensation dispute.  (Compl.  ¶¶ 42-44.)  They have managed to resolve other

disputes since the Sale, and in settlement agreements relating to those other disputes

Weyerhaeuser has been careful to reserve its right to pursue unresolved disputes in the future.

(*Id.*)  In its Complaint, Weyerhaeuser offers examples from 2009 and 2013.  (*Id.*)  In the 2013

settlement agreement, the parties very specifically described the unresolved workers

compensation disputes at issue here, and agreed to "address them at a later date after the Parties

have finalized the population of claims to be included in a settlement."  (*Id.* ¶ 44.)  In so doing,

the parties reserved all their rights to pursue those unresolved workers compensation claims.

(*Id.*)

Under Delaware law, the statute of limitations can be waived or tolled by agreement. *E.g.*, *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 421 (Del. 1985) ("The statute of limitations . . . may be waived."); *E.I. DuPont de Nemours & Co. v. Medtronic Vascular, Inc.*, C. A. No. N10C-09-058 MMJ CCLD, 2013 WL 261415, at *11 (Del. Super. Ct. January 18, 2013) (recognizing that parties may agree to toll Delaware statute of limitations for contract actions). Here, the parties documented their intention to preserve unresolved disputes, including workers compensation disputes, for future resolution. Weyerhaeuser filed this action only after it became clear that the workers compensation dispute could not be amicably resolved.

Weyerhaeuser has alleged that it has preserved its rights to pursue its workers compensation claims pursuant to agreement with Domtar. Weyerhaeuser has alleged the existence of at least two relevant agreements. The Court must treat these allegations as true, and construe the Complaint in the light most favorable to Weyerhaeuser. Weyerhaeuser has met its burden under Rule 8, and the Court should not dismiss any claims at this stage of the proceedings for allegedly failing to meet Delaware's statute of limitations.

### C.   Domtar Has Breached its Contractual Obligation to Administer Workers Compensation Claims for Transferred Employees.

Domtar has accepted responsibility for paying some Transferred Employees' workers compensation claims, but, as alleged in the Complaint, it has not accepted responsibility for *administering* those claims. (Compl. ¶¶ 50-58.) The same contractual provisions that transferred Retired Employees workers compensation liability to Domtar also transferred workers compensation liability for Transferred Employees—including responsibility for administrative costs. (*E.g.*, Dankworth Decl. Ex. A § 2.03(a).)

Domtar does not deny this. Domtar complains only that Weyerhaeuser "does not allege any demand by Weyerhaeuser that Domtar make any payment or the existence of any

purportedly unpaid invoices or amounts." (Mot. to Dismiss at 9-10.) Domtar is mistaken and, in any event, these are not elements of a breach of contract claim in Delaware.

In Delaware, to prove a breach of contract a plaintiff must show (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) damage to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Delaware does *not* require plaintiffs to show that a demand was made and refused. *See id.* Indeed, courts can safely assume that a defendant who chooses to defend itself (as here) would not accede to plaintiff's demands. Delaware also does *not* require plaintiffs to generate invoices and send them to prospective defendants before filing suit. *See id.*

Here, Weyerhaeuser *has* alleged that Domtar has refused Weyerhaeuser's requests to undertake administration of workers compensation claims. (Compl. ¶¶ 57-58.) And in Paragraph 54 of the Complaint, Weyerhaeuser also alleges that administration of Transferred Employee workers compensation claims was among the unresolved workers compensation disputes preserved for future resolution in a 2013 settlement agreement signed by the parties. Surely the parties would not have identified that issue as an ongoing dispute if it were not actually disputed.

Weyerhaeuser has also adequately alleged damages. It has alleged that it has been administering claims that should have been administered by Domtar and that it has incurred significant expenses in doing so. (Compl. ¶¶ 52, 56.) Weyerhaeuser is not obligated, at this stage, to calculate ongoing damages with precision. Weyerhaeuser has alleged facts sufficient for the Court and Domtar to conclude that some amount of damage has been incurred by Weyerhaeuser, and the Court certainly has no basis to conclude that the administration of workers compensation claims costs literally nothing.

13

Weyerhaeuser has pleaded facts sufficient to show the existence of a contractual obligation, the breach of that obligation by Domtar, and damages incurred by Weyerhaeuser.  At this stage of the proceedings, Weyerhaeuser has met its burden.  *E.g.*, *Iqbal*, 556 U.S. at 678 (Rule 8 "does not require 'detailed factual allegations'").  The Court should deny Domtar's Motion to Dismiss.

     **D.**      **<u>Even if Domtar's Arguments Had Merit (They Do Not), Weyerhaeuser Would be Entitled to Amend Its Complaint.</u>**

In the Third Circuit, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3rd Cir. 2008).  Courts must provide plaintiffs that opportunity even if the plaintiff does not seek leave to amend.  *Id.*  In other words, the Court cannot dismiss Weyerhaeuser's Complaint with prejudice, as Domtar requests, even if Domtar's arguments have merit.

For all the reasons discussed above, the Court should not grant Domtar's Motion to Dismiss.  But if it does, Weyerhaeuser requests the opportunity to amend its Complaint pursuant to *Phillips*.

**V.**      **<u>CONCLUSION</u>**

This is not a case ripe for dismissal under Rule 12(b)(6).  Weyerhaeuser has alleged facts showing the existence of contractual obligations assumed by Domtar, and the plain language of the contracts supports Weyerhaeuser's interpretation.  Weyerhaeuser has alleged facts showing that Domtar has breached those obligations, and that Weyerhaeuser has incurred damages.  Weyerhaeuser's allegations meet the standards of Rule 8, and the Court should, accordingly, deny Domtar's Motion to Dismiss.

March 10, 2014                                  BAYARD, P.A.

OF COUNSEL:                                       /s/ Stephen B. Brauerman
                                                 Stephen B. Brauerman (No. 4952)
Laurie Lootens Chyz                              Evan T. Miller (No. 5364)
Michael J. Ewart                                 222 Delaware Avenue, Suite 900
Hillis Clark Martin & Peterson P.S.              P.O. Box 25130
1221 Second Avenue, Suite 500                    Wilmington, DE  19899
Seattle WA 98101-2925                            (302) 655-5000
(206) 623-1745                                   sbrauerman@bayardlaw.com
llc@hcmp.com                                     emiller@bayardlaw.com
mje@hcmp.com
                                                 Attorneys for Plaintiff,
                                                 Weyerhaeuser Company