**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation | |
| Plaintiff, | |
| v. | C.A. No. 14-00024-SLR |
| DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company, | |
| Defendants. | |

**WEYERHAEUSER COMPANY'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

September 25, 2015                          BAYARD, P.A.

OF COUNSEL:                                Stephen B. Brauerman (No. 4952)
                                           Evan T. Miller (No. 5364)
Laurie Lootens Chyz, WSBA #14297           222 Delaware Avenue, Suite 900
Michael J. Ewart, WSBA #38655              P.O. Box 25130
Hillis Clark Martin & Peterson P.S.        Wilmington, DE  19899
1221 Second Avenue, Suite 500              (302) 655-5000
Seattle WA 98101-2925                      sbrauerman@bayardlaw.com
(206) 623-1745                             emiller@bayardlaw.com
llc@hcmp.com;
mje@hcmp.com                               Attorneys for Plaintiff,
                                           Weyerhaeuser Company

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.    SUMMARY OF ARGUMENT ...................................................................................1

III.   STATEMENT OF FACTS ........................................................................................2

     A.     The Court has Already Held that Domtar Assumed the Workers Compensation Liabilities when It Purchased the Fine Paper Business from Weyerhaeuser ..........2

     B.     Domtar's Waiver Defense.......................................................................................3

     C.     Claims Administration ...........................................................................................9

     D.     Weyerhaeuser's Damages ......................................................................................9

IV.   ARGUMENT ........................................................................................................10

     A.     Domtar Assumed Workers Compensation Liability for Retired Employees.........11

     B.     Weyerhaeuser Did Not Waive its Rights Under the Contracts..............................11

           1.     Waiver cannot be based on a mistake .......................................................12

           2.     Waiver cannot be based on Weyerhaeuser's conduct.................................13

           3.     Giardini did not intend for Domtar to rely on her November 2008 letter..14

           4.     Any waiver would not apply after January 2012 .......................................15

     C.     The Court Should Award Weyerhaeuser $1,088,860.69 in Damages ..................16

V.    CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Action Drug Co. v. R. Baylin Co.*,
  1989 WL 69394 (Del. Ch. June 19, 1989)...................................................................11

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
  871 A.2d 428 (Del. 2005) .............................................................................................11

*Amirsaleh v. Board of Trade of City of New York, Inc.*,
  27 A.3d 522 (Del. 2011) ...............................................................................................15

*Citadel Holding Corp. v. Roven*,
  603 A.2d 808 (Del. 1992) .............................................................................................16

*Dervaes v. H.W. Booker Constr. Co.*,
  1980 WL 333053 (Del. Super. Ct. May 28, 1980) ...............................................11, 13

*In re Blair*,
  18 B.R. 277 (Bankr. D.N.D. 1982) ..............................................................................12

*In re Marriage of Woods*,
  207 Or. App. 452, 142 P.3d 1072 (2006)......................................................................12

*Max 237 v. City of Portland*,
  115 Or. App. 342 (1992)................................................................................................14

*Minnesota Mut. Fire & Cas. Co. v. Rudzinski*,
  347 N.W.2d 848 (Minn. Ct. App. 1984) .......................................................................12

*Moore v. Travelers Indem. Ins. Co.*,
  408 A.2d 298 (Del. Supr. 1979).....................................................................................12

*Price v. Wilmington Trust Co.*,
  1995 WL 317017 (Del. Ch. May 19, 1995)....................................................................15

*Realty Growth Investors v. Council of Unit Owners*,
  453 A.2d 450 (Del. 1982) ..............................................................................................11

*Rexnord Indus., LLC v. RHI Holdings, Inc.*,
  No. CIV. A. 07C-10-057RRC, 2009 WL 377180 (Del. Super. Feb. 13, 2009)......................16

**Treatises**

26 Am. Jur. 2d, Estoppel and Waiver .............................................................................................11

28 Am. Jur. 2d., Estoppel and Waiver (1966) ............................................................................11

## I.  NATURE AND STAGE OF THE PROCEEDINGS

On January 13, 2014, Plaintiff Weyerhaeuser Company ("Weyerhaeuser") filed a

Complaint against Defendants Domtar Corporation and Domtar Paper Company, LLC

(collectively, "Domtar").  Weyerhaeuser filed suit because Domtar has failed to assume workers

compensation obligations transferred to Domtar when Domtar bought Weyerhaeuser's Fine

Paper business in 2007.

On February 21, 2014, Domtar moved to dismiss the Complaint.  (D.I. 12.)  The Court

denied Domtar's motion in part, and granted it in part.  The Court held that, under the relevant

contracts, Domtar is responsible for the workers compensation obligations at issue.  (D.I. 18

at 8.)  However, the Court also held that Delaware's statute of limitations bars recovery for

payments made on workers compensation claims that accrued more than three years before this

action was filed.  (*Id.* at 13.)

Domtar filed an Answer to Weyerhaeuser's Complaint on August 13, 2014.  (D.I. 20.)

Domtar asserted two affirmative defenses:  (1) statute of limitations (which the Court has already

addressed), and (2) waiver.  (*Id.* at 9-10.)  The parties have engaged in discovery since then,

focusing largely on the waiver issue.  Pursuant to Federal Rule of Civil Procedure 56,

Weyerhaeuser now moves for summary judgment as to waiver, and all remaining issues in the

case.

## II.  SUMMARY OF ARGUMENT

1.  As the Court has already determined, the relevant contracts assign Domtar all

workers compensation liability for Fine Paper employees who were retired or otherwise

terminated before Domtar purchased the Fine Paper business.

2.  Weyerhaeuser has not waived its right to transfer that liability to Domtar under

the contracts.  Domtar has consistently argued that the contracts do not assign it liability for the

disputed workers compensation payments.  Weyerhaeuser has taken the opposite position.  For a period of time, Weyerhaeuser, at Domtar's urging, accepted Domtar's mistaken reading of the contract language, but Weyerhaeuser later reasserted its original position that Domtar is responsible for these claims.  Weyerhaeuser's temporary and mistaken interpretation of the contracts does not constitute an intentional and voluntary relinquishment of a known right, and therefore is not waiver under Delaware law.

3.      Excluding damages the Court has determined Weyerhaeuser cannot recover under the statute of limitations, Weyerhaeuser has been damaged in the amount of $1,088,860.69.  That amount includes payments made on claims that belong to Domtar, and the administrative costs associated with handling Domtar's workers compensation claims.  The Court should also award Weyerhaeuser pre- and post-judgment interest on that amount.

## III.     STATEMENT OF FACTS

### A.     The Court has Already Held that Domtar Assumed the Workers Compensation Liabilities when It Purchased the Fine Paper Business from Weyerhaeuser

Weyerhaeuser sold its Fine Paper business to Domtar on March 7, 2007 (the "Sale"). (D.I. 1 ¶ 8; D.I. 20 ¶ 8.)  The $3.3 billion Sale was structured to transfer all assets and liabilities of the Fine Paper business to Domtar except for assets and liabilities expressly retained by Weyerhaeuser.  (*See* Mem. Op., July 30, 2014 (D.I. 18) at 8.)  That transfer included responsibility for nearly all workers compensation liabilities—past, present, and future— associated with the Fine Paper business.  (*See id.*)

Three categories of Fine Paper employees are relevant to this dispute.  The first category consists of Fine Paper employees who worked for Weyerhaeuser before the Sale, and who continued to work for Domtar after the Sale ("Transferred Employees").  (*See id.* at 2.)  The second category consists of a very small number of Fine Paper employees who were still

employed at Weyerhaeuser at the time of the Sale but who were receiving workers compensation benefits and were not working at the time of the Sale (these employees were called "U.S. WC Newco Employees" in the Sale contracts).  (*See id.*)  The third category consists of all other pre-Sale Fine Paper employees, including employees who were retired or otherwise terminated at the time of the Sale.  (*See id.*)  This category ("Retired Employees") includes only employees who never became Transferred Employees.  (*See id.*)

After the Sale, Domtar accepted responsibility for Transferred Employees, and the parties agree that Weyerhaeuser expressly retained responsibility for U.S. WC Newco Employees unless they returned to work for Domtar.  The parties dispute liability only for Retired Employees.

After Weyerhaeuser filed its complaint, Domtar moved to dismiss based on the language of the Sale contracts.[1]  (D.I. 12.)  Domtar argued that the contracts assigned workers compensation liability to Domtar only for Transferred Employees.  (D.I. 13.)  Weyerhaeuser argued that Domtar was contractually responsible for both Transferred and Retired Employees.  (D.I. 16.)  The Court denied Domtar's motion, and held that Domtar had contractually assumed liability for both Transferred and Retired Employees.  (D.I. 18 at 8.)  Accordingly, contractual responsibility for Retired Employees is no longer in dispute—the responsibility is Domtar's.

### B.    Domtar's Waiver Defense

Domtar now claims, however, that Weyerhaeuser "released and waived all claims against Domtar with respect to workers compensation claims made by Retired Employees through its course of conduct and communications."  (D.I. 20 at 10 (Domtar Answer and Affirmative Defenses).)  Understanding Domtar's waiver defense requires additional factual background.

---

[1] The relevant contracts (sometimes described in this brief and other papers as the "Sale contracts") are attached as Exhibits A and B to the Dankworth Declaration (D.I. 14) filed in support of Domtar's motion to dismiss.  Exhibit A is the Amended and Restated Contribution and Distribution Agreement ("Contribution Agreement"), and Exhibit B is the Amended and Restated Transaction Agreement ("Transaction Agreement").

This dispute dates to at least April 2007 (just after the Sale), when Weyerhaeuser assigned $13,594,814 in workers compensation liability to Domtar in post-Sale accounting adjustments.  (Dep. Ex. 120, attached as Ex. A to the Decl. of Laurie Lootens Chyz in Supp. of Pl. Weyerhaeuser Co.'s Mot. for Summ. J. ("Chyz Decl.").)  Domtar refused to accept this liability.  In an email dated April 23, 2007, Domtar employee Michael Cross told Weyerhaeuser that he had "done a tour of the parish on this issue," and that it was Domtar's "collective understanding that [workers compensation] is not a liability that belongs to Domtar Corp."  (*Id.*)  Weyerhaeuser disagreed, and told Domtar that Weyerhaeuser would make workers compensation payments on Domtar's behalf until the issue was resolved.  (*Id.*)

Weyerhaeuser continued to assign workers compensation liability to Domtar during post-Sale discussions.  On June 6, 2007, Domtar's general counsel, Gilles Pharand, wrote to Weyerhaeuser's general counsel, Sandy McDade, again to dispute allocation of the $13,594,814 workers compensation liability to Domtar.  (Dep. Ex. 39, attached as Ex. C to the Chyz Decl.)  When McDade responded, he identified the contract provisions that assigned liability to Domtar, and outlined the same contract analysis later applied by the Court in denying Domtar's motion to dismiss.  (Dep. Ex. 68 at 2, attached as Ex. E to the Chyz Decl.)  Weyerhaeuser then began requesting payment from Domtar for workers compensation payments made on Domtar's behalf.  (*E.g.*, Dep. Ex. 69 at 1-2, attached as Ex. G to the Chyz Decl.)

The workers compensation dispute continued unresolved for another year.  By mid-2008, Anne Giardini, general counsel for Weyerhaeuser's Canadian subsidiary, had taken over responsibility for negotiating many post-Sale disputes for Weyerhaeuser, including workers compensation.  (Decl. of Anne Giardini in Supp. of Pl. Weyerhaeuser Co.'s Mot. for Summ. J. ("Giardini Decl.") ¶ 2.)  On June 3, 2008, Giardini wrote to Domtar about several post-Sale

disputes, including workers compensation, and asked for a meeting to discuss them.  (Dep.

Ex. 69 at 1-2.)  Giardini reiterated that the Sale contracts allocated workers compensation

liability to Domtar, and explained that Domtar owed Weyerhaeuser $3,543,789 for post-Sale

workers compensation payments already made on Domtar's behalf.  (*Id.*)

Domtar responded on July 11, 2008.  Zygmunt Jablonski, Domtar's vice president for

legal services, agreed to meet with Weyerhaeuser, and asked Giardini to explain how

Weyerhaeuser was calculating the workers compensation liability.  (Dep. Ex. 70 at 1, attached as

Ex. I to the Chyz Decl.)  In a follow up letter dated September 8, 2008, Jablonski told Giardini

that Domtar had "assumed certain worker's compensation claims with respect to the Transferred

Employees," but that there was "no requirement anywhere in the Transaction Documents for

Domtar to pay Weyerhaeuser for any accounting accrual" for workers compensation liability.

(Dep. Ex. 72 at 1, attached as Ex. K to the Chyz Decl.)  In other words, Domtar indicated that it

was willing to make workers compensation payments for Transferred Employees, but that it

would not accept responsibility for other workers compensation liabilities.

On September 11, 2008, Domtar and Weyerhaeuser met in Montreal to discuss these

issues.  (*E.g.*, Giardini Dep. 65:16-19, attached as Ex. H to the Chyz Decl.)  At the meeting,

Jablonski repeated Domtar's response to Weyerhaeuser's contractual argument.  Domtar took the

position it unsuccessfully advanced in this litigation—that the Sale contracts made it responsible

only for Transferred Employees.  (*Id.* 67:5-14.)  At her deposition, Giardini testified that, during

the meeting, she found Jablonski's arguments persuasive.  (*Id.*)

Giardini wrote a follow-up letter to Jablonski on November 26, 2008.  (Dep. Ex. 79,

attached as Ex. L to the Chyz Decl.)  Domtar's waiver defense hinges on this letter.  The letter

addressed the various disputes the parties discussed in Montreal in September.  With respect to

workers compensation, the letter explained that previous invoices sent to Domtar for workers compensation payments "were based on our employees' understanding that all workers compensation liability transferred to Domtar.  In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar [i.e., Transferred Employees]."  (*Id.* at 3.)

At her deposition, Giardini explained that this conclusion was based on her mistaken interpretation of the Sale contracts:  "The conclusion that workers' compensation liability went to Domtar only for employees that showed up to work at Domtar is mistaken advice from me. That conclusion is based on mistaken advice from me and misreading of the agreements." (Giardini Dep. 98:21-25.)  It was mistaken advice, she explained, because she was focused on the wrong contract provisions.  (*Id.* 99:25-100:5.)  Giardini also testified that neither party had turned its attention to potential liabilities associated with Retired Employees (*id.* 79:6-12), and the testimony of Domtar witnesses confirms that Retired Employee claims were never discussed at the September meeting (*e.g.*, Cross Dep. 50:8-51:2, 142:16-19, attached as Ex. D to the Chyz Decl.; Dagenais Dep. 42:23-43:6, 45:8-46:7, 46:9-22, attached as Ex. M to the Chyz Decl.).  This is likely because, under the Canadian workers compensation system (with which Giardini and Domtar were most familiar), neither company would have ongoing responsibility for workers compensation owed to Retired Employees.  (Giardini Dep. 79:6-12, 159:19-160:9.)

Although Giardini admits being temporarily persuaded (wrongly) by Domtar's legal position, Giardini's November 26, 2008 letter is marked "WITHOUT PREJUDICE" prominently on its first page.  (Dep. Ex. 79 at 1.)  Giardini, a Canadian lawyer, used this designation to indicate that the information conveyed was for negotiation purposes only and that the recipient could not rely on the letter unless it was later confirmed by formal, binding agreement.  (Giardini

Dep. 117:3-16.)  Domtar employees also used the "Without Prejudice" designation on

correspondence.  (*E.g.*, Jablonski Dep. 91:17-93:5, 93:8-10, 116:9-117:9, 117:12-20, 155:20-

156:23, attached as Ex. J to the Chyz Decl.)  And Domtar employees also understood that

communications marked "Without Prejudice" could not be relied on by the recipient.[2]  In fact, in

other, contemporaneous post-Sale negotiations with Domtar, Giardini had insisted that Domtar

remove the "Without Prejudice" designation from one of its letters, since Giardini and

Weyerhaeuser wanted to be "able to rely on" it.  (Giardini Decl. ¶¶ 3-4 & Ex. A; *see also*

Giardini Dep. 121:20-24 ("Q:  Did you indicate to Domtar that you needed letters from them to

state 'With Prejudice' or not include 'Without Prejudice?'  A:  When I needed to be able to rely

on something, yes.").)

      Domtar made no attempt to memorialize Giardini's statement regarding workers

compensation liabilities in any formal agreement, even though it was the parties' practice to

execute formal agreements when disputes had been resolved.  (Giardini Dep. 109:4-14, 120:24-

121:24; Giardini Decl. ¶ 4; Jablonski Dep. 97:5-8.)  For example, the parties entered into a

settlement agreement in December 2009 resolving other post-Sale disputes.  (Dep. Ex. 84,

attached as Ex. O to the Chyz Decl.)  That agreement did not address the disputed workers

compensation issues here, and reserved each sides' rights with respect to all matters not

addressed in that agreement.  (*Id.* ¶ 4.)

      For approximately three years after Giardini's letter, Weyerhaeuser did not tender

workers compensation claims for Retired Employees.  (*See* Lane Dep. 50:16-51:20.)

---

[2] Brzezinski Dep. 101:6-9 ("Q:  But your understanding is 'without prejudice' means that it's
without prejudice to somebody's legal rights; correct?  A:  That is what it's supposed to mean."),
attached as Ex. N to the Chyz Decl.; Cross Dep. 179:16-18, 180:4-6 ("Q:  Okay.  At the top of
this letter, on the first page, it says 'without prejudice.'  Do you know what that meant?"
A: " . . . My understanding is, it means that it's not to be used against me, you know, if you say
something along those lines."); Dagenais Dep. 170:8-10 ("A:  'Without prejudice' is something
that you will put on the paper to – and make sure that you preserve your rights.").

Weyerhaeuser resumed tendering these claims in January 2012.  (Dep. Exs. 190-91, attached as Exs. P-Q to the Chyz Decl.)  In its tender letters, Weyerhaeuser renewed its claim that workers compensation liability transferred to Domtar in the Sale.  In letters rejecting the tenders, Domtar continued to cite language in the Sale contracts—specifically, Section 2.03(a)(vii) of the Contribution Agreement—that it believed assigned it responsibility only for Transferred Employees.  (*E.g.*, *id.*)  Domtar never referenced or indicated any reliance upon Giardini's November 26, 2008 statement in any of these tender responses.  (*E.g.*, Dep. Exs. 190, 191, 193, 197, 225; Dep. Exs. 193, 197, and 225 are attached as Exs. R-T to the Chyz Decl.)  This back-and-forth continued until this litigation commenced, and prior to this litigation, Domtar never contended the issue had been waived.  (*See id.*; *see also* Dep. Ex. 222, attached as Ex. U to the Chyz Decl.)

In fact, as recently as 2013, the parties explicitly agreed that workers compensation was an open and unresolved issue.  In another formal agreement dated February 28, 2013, resolving other outstanding disputes, the parties explicitly agreed that the agreement did "not address" the workers compensation disputes at issue here, and stated that they intended "to address issues relating to these Non-Addressed Workers Comp claims at a later date after the Parties have finalized the population of claims to be included in a settlement."  (Dep. Ex. 143 ¶ 9, attached as Ex. V to the Chyz Decl.)  Nothing in that provision suggests that workers compensation had been resolved by a previous settlement or waiver of rights.  To the contrary, Domtar consistently argued—including in this litigation—that the Sale contracts themselves (not some subsequent agreement *changing* the contracts) assigned Domtar liability only for Transferred Employees.  (*E.g.*, D.I. 13.)

### C.   Claims Administration

In addition to paying the workers compensation claims that contractually belong to Domtar, Weyerhaeuser has had to continue administering them.  Weyerhaeuser has contracted with a third party to receive, evaluate, and manage the payment of Retired Employee workers compensation claims.  (Decl. of Susan LaPrairie in Supp. of Pl. Weyerhaeuser Co.'s Mot. for Summ. J. ("LaPrairrie Decl.") ¶ 6.)  Weyerhaeuser pays the third party for those services.  (*Id.*)  Under the Sale contracts, Domtar is responsible for all aspects of these claims—including administration.  (*E.g.*, D.I. 18 at 8.)

Weyerhaeuser has even been left with responsibility for administering claims made by Transferred Employees.  (LaPrairie Decl. ¶ 7.)  For example, Weyerhaeuser pays claims and administration expenses to the third party vendor, then bills those costs to Domtar.  (*Id.*)  More than eight years after the Sale was completed, Domtar has not taken over these claims, despite Weyerhaeuser's repeated requests.  Weyerhaeuser has periodically invoiced Domtar for these administration expenses, and Domtar has paid most of these invoices, but Weyerhaeuser is not obliged to administer these claims under the Sale contracts.[3]  The burden of doing so exceeds Weyerhaeuser's billed costs.  For example, Weyerhaeuser must set aside reserves on its books to pay for Transferred Employee claims (which Domtar acknowledges are its responsibility), and Domtar has audited Weyerhaeuser to ensure that Weyerhaeuser is maintaining sufficient reserves to pay those claims.  (*Id.*)

### D.   Weyerhaeuser's Damages

Since the Sale, Weyerhaeuser has made more than $9.9 million in payments on Domtar's workers compensation claims.  (LaPrairie Decl. ¶ 2.)  Under the Court's statute of limitations

---

[3] Domtar has only one outstanding invoice, in the amount of $1,150, for the administration of Transferred Employee claims.  (LaPrairie Decl. ¶ 7.)  Weyerhaeuser assumes Domtar does not deny responsibility for these charges, and will pay the invoice in a timely manner.

ruling, however, Weyerhaeuser can recover only for claims that accrued after a date three years before this action was filed.  From January 2011 through June 2015, Weyerhaeuser made $1,032,742.01 in workers compensation payments for 28 Retired Employee workers compensation claims.  (*Id.* ¶ 3 & Exs. 1-26.)  Fourteen of those claims remain open, and may continue to require payments.[4]  (*Id.* ¶ 4.)  New claims may come in at any time.  (*Id.*)

Domtar has also denied responsibility for two lawsuits brought by Retired Employees for work-related injuries.[5]  (Dep. Exs. 227-28, attached as Exs. W-X to the Chyz Decl.)  Domtar asserts that these lawsuits are part of the parties' ongoing workers compensation dispute (even though they are not formal workers compensation claims) and has denied responsibility for those lawsuits on the same basis it denies liability for workers compensation claims.  (*E.g.*, Dep. Ex. 228 at WEY00018982.)  Weyerhaeuser has, to date, made $21,581.68 in payments relating to those two lawsuits.  (LaPrairie Decl. ¶ 5 & Exs. 27-28.)

Through June 2015, Weyerhaeuser has also incurred $34,537 in expenses for administering the Retired Employees' claims.  (*Id.* ¶ 6 & Exs. 29-30.)  As with claims payments themselves, these administrative expenses are ongoing.

## IV.   ARGUMENT

Under Federal Rule of Civil Procedure 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Here, there is no genuine dispute as to any material fact.  The Court has already held that Domtar is responsible for the disputed workers

---

[4] Settlements in principle have been reached with respect to two of these open claims (File No. 30141812897-0001, in the amount of $205,000, and File No. B3600G1671-0001-01, in the amount of $400,000).  These settlement amounts have not been included in Weyerhaeuser's damages figure, but, if Weyerhaeuser prevails on this motion, the Court should also require Domtar to pay these amounts when they become due.  (LaPrairie Decl. ¶ 4.)

[5] *Stan Wesner v. A.W. Chesterton Co.* (Case No. 14-L-115, Third Judicial Circuit, Madison Co., IL) and *Charles Bowen v. Aesys Technologies, et al.* (Cause No. 1422-CC00582, 22nd Judicial Circuit, St. Louis, MO).

compensation payments under the plain terms of the contracts.  Domtar's only defenses are statute of limitations and waiver.  Weyerhaeuser has not waived its rights under Delaware law or the relevant contracts.  Weyerhaeuser is therefore entitled to an order requiring Domtar to accept full responsibility for Retired Employees' workers compensation claims, and to pay Weyerhaeuser its damages for payments already made on Domtar's behalf.

### A.      Domtar Assumed Workers Compensation Liability for Retired Employees

As discussed above, the Court has already held that Domtar has contractual liability for the workers compensation claims at issue.  Summary judgment is therefore appropriate as to contractual liability.

### B.      Weyerhaeuser Did Not Waive its Rights Under the Contracts

Domtar's sole remaining defense is its claim of waiver.  (D.I. 20 at 10.)  In Delaware, waiver is "the voluntary and intentional relinquishment of a known right."[6]  *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982) (citing 28 Am. Jur. 2d., Estoppel and Waiver, § 158 (1966)). Waiver requires "knowledge of all material facts, and intent to waive."  *Id.*  The facts relied upon for proof of waiver "must be unequivocal in character."  *Id.* There must be "a clear, unequivocal and decisive act of the party showing" the intent and purpose to waive.  *Dervaes v. H.W. Booker Constr. Co.*, 1980 WL 333053, at *7 (Del. Super. Ct. May 28, 1980) (citing 26 Am. Jur. 2d, Estoppel and Waiver, § 158).  And while Delaware law permits a party to waive contractual rights, the standards for proving waiver in that context are "quite exacting."  *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).  In fact, waiver is a disfavored defense in Delaware.  *Action Drug Co. v. R. Baylin Co.*, 1989 WL 69394, at *5 (Del. Ch. June 19, 1989).

---

[6] The relevant contracts are governed by Delaware law.  (Contribution Agreement § 9.07 (D.I. 14 Ex. A).)

No waiver occurred here.  The dispute over workers compensation liability resulted from competing interpretations of the Sale contracts.  For a time, Anne Giardini was persuaded by Domtar's incorrect interpretation of the contract, but her mistake does not constitute an intentional relinquishment of a known right.  Even if Giardini did waive Weyerhaeuser's rights to recover certain workers compensation payments, any waiver should not extend beyond January 2012, when Weyerhaeuser resumed tendering claims to Domtar.  Weyerhaeuser plainly did not waive its rights with respect to claims tendered after January 2012, and, even if it had, Delaware law permits a waiver to be retracted absent prejudice to the other party.  Domtar cannot show it has been prejudiced by Weyerhaeuser's decision in January 2012 to resume tendering workers compensation claims that were rightfully Domtar's responsibility under the Sale contracts.  The Court should enter summary judgment for Weyerhaeuser.

        1.    <u>Waiver cannot be based on a mistake</u>

Under Delaware law, "[t]he requisite intention to establish a waiver cannot be found in mistake." *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298, 302 (Del. Supr. 1979); *accord Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848, 851 (Minn. Ct. App. 1984) ("A mutual mistake of law is not a voluntary relinquishment of a known right and consequently does not support a claim of waiver."); *In re Blair*, 18 B.R. 277, 278 (Bankr. D.N.D. 1982); *In re Marriage of Woods*, 207 Or. App. 452, 462, 142 P.3d 1072 (2006).  No waiver occurred here because this dispute was caused by Domtar's mistaken interpretation of the Sale contracts and Giardini's temporary agreement with that mistaken interpretation.

From the beginning, Domtar denied responsibility for workers compensation claims brought by anyone except Transferred Employees.  Domtar held to that position even in this litigation.  Although Weyerhaeuser disagreed with Domtar for the first 18 months following the Sale, Giardini was later persuaded by Domtar's position, and then expressed her agreement in

her non-binding November 2008 letter.  That mistake does not constitute a "voluntary and intentional relinquishment of a known right."  The parties simply (and incorrectly) temporarily agreed that the Sale contracts assigned most workers compensation liability to Weyerhaeuser. The parties did not amend the contracts, modify the contracts, or even informally agree that they would behave in a manner inconsistent with the contracts.  (For example, Giardini's letter did *not* say "notwithstanding the contract language, Weyerhaeuser is willing to accept responsibility for U.S. workers compensation for non-Transferred Employees.")  The parties simply made a mistake that went unnoticed by anyone until Weyerhaeuser began tendering claims again in January 2012.  That period of mistake does not change the terms of the contracts the parties signed.

### 2.   Waiver cannot be based on Weyerhaeuser's conduct

The Sale contracts do not permit a party to waive its rights by engaging in conduct inconsistent with its rights.  Under Section 9.10 of the Contribution Agreement, no provisions of the contract "shall be deemed waived, amended, supplemented or modified" unless the waiver "is in writing and signed" by an authorized representative of the waiving party.  (D.I. 14 Ex. A.) Domtar cannot, therefore, point to Weyerhaeuser's failure (for a period of time) to tender disputed workers compensation claims as a basis for waiver.

Even if the parties' conduct were relevant, Domtar cannot show the "clear, unequivocal and decisive act" required for waiver under Delaware law.  *Dervaes*, 1980 WL 333053, at *7. Weyerhaeuser's conduct, taken as a whole over the life of this dispute, was far from unequivocal. Weyerhaeuser initially took the position that workers compensation was Domtar's responsibility, then agreed with Domtar's mistaken interpretation of the agreements for a period, and then reasserted its position well before this litigation.  During that time, Domtar continued to respond by pointing to the contract language, and never claimed a waiver until the Court rejected

Domtar's contract analysis.  Neither party ever acted as if a waiver had occurred.  That inconsistent course of conduct weighs heavily against finding a waiver.  *Max 237 v. City of Portland*, 115 Or. App. 342, 346 (1992) (finding that a party's letter did not waive that party's rights where, among other things, evidence of subsequent negotiations "show[ed] that neither party considered the letter to constitute a waiver").

3.   <u>Giardini did not intend for Domtar to rely on her November 2008 letter</u>

Giardini's November 26, 2008 letter was written in the course of negotiating resolutions to various disputes, and was prominently marked "WITHOUT PREJUDICE."  Giardini testified that she used this designation to indicate that the contents of the letter were for negotiation purposes only and that the recipient could not rely on the letter unless it was later confirmed by a formal written agreement.  (Giardini Dep. 117:6-16.)  Domtar employees had the same understanding of communications marked "Without Prejudice,"[7] and in fact used the same designation themselves on communications.  On at least one occasion, Giardini asked Domtar to remove the "Without Prejudice" designation from a letter on which she wanted to rely.  The "Without Prejudice" designation was consequential to Giardini and Domtar.  And because Giardini did not intend for Domtar to rely on her November 26, 2008 "WITHOUT PREJUDICE" letter, she cannot have used that letter to voluntarily and intentionally relinquish a known right.

---

[7] Brzezinski Dep. 101:6-9 ("Q:  But your understanding is 'without prejudice' means that it's without prejudice to somebody's legal rights; correct?  A:  That is what it's supposed to mean."); Cross Dep. 179:16-18, 180:4-6 ("Q:  Okay.  At the top of this letter, on the first page, it says 'without prejudice.'  Do you know what that meant?"  A: " . . . My understanding is, it means that it's not to be used against me, you know, if you say something along those lines."); Dagenais Dep. 170:8-10 ("A:  'Without prejudice' is something that you will put on the paper to – and make sure that you preserve your rights.").

4.      Any waiver would not apply after January 2012

Even if the Court had a basis to decide that Giardini waived Weyerhaeuser's rights with respect to certain workers compensation claims (it does not), Giardini's waiver does not extend to claims tendered to Domtar beginning in January 2012.  Weyerhaeuser plainly did not waive any rights with respect to claims it actually tendered, and it could not have released Domtar from its obligations with respect to those claims before the claims even existed.  Claims tendered after January 2012 are distinct from claims that went un-tendered before that time.  *See*, *e.g.*, *Price v. Wilmington Trust Co.*, 1995 WL 317017, *3 (Del. Ch. May 19, 1995) (each breach in a series of similar breaches is treated separately for purposes of the statute of limitations).

Even if a waiver extended generally to future workers compensation claims, a "waiving party may retract [a] waiver by giving reasonable notice to the non-waiving party before that party has suffered prejudice or materially changed his position."  *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 530 (Del. 2011).  Here, Domtar has not suffered any prejudice because of Giardini's mistake.  To the contrary, Domtar has benefitted tremendously from it.  Weyerhaeuser has paid more than $9.9 million on workers compensation claims that were rightfully Domtar's responsibility.  Weyerhaeuser now cannot recover approximately $8.8 million of those payments because of this Court's application of Delaware's statute of limitations.  Weyerhaeuser resumed tendering claims in January 2012, and Domtar can identify no prejudice associated with Weyerhaeuser's decision to enforce the Sale contracts going forward.  (Indeed, it acknowledged the existence of the ongoing dispute when it signed the 2013 settlement agreement with Weyerhaeuser.  (Dep. Ex. 143 ¶ 9.))  Weyerhaeuser simply asks the Court to compel Domtar to accept contractual liabilities it should have accepted years ago.

C.      **The Court Should Award Weyerhaeuser $1,088,860.69 in Damages**

Weyerhaeuser has, from January 2011 through June 2015, paid $1,088,860.69 on workers compensation claims that belong to Domtar.  The Court should permit Weyerhaeuser to recover this amount, plus prejudgment interest.

Prejudgment interest is awarded as a matter of right in Delaware.  *Citadel Holding Corp. v. Roven*, 603 A.2d 808, 826 (Del. 1992).  In breach of contract cases, prejudgment interest is calculated using a rate that is fixed as of the time of the breach.  *Rexnord Indus., LLC v. RHI Holdings, Inc.,* No. CIV. A. 07C-10-057RRC, 2009 WL 377180, at *9 (Del. Super. Feb. 13, 2009).  The rate is calculated according to the Federal Reserve discount rate as of the date of the liability and it remains fixed at that rate.  *Id.*  Prejudgment interest on a contract claim is simple interest.  *Id.*

Here, prejudgment interest must be calculated on each relevant payment since January 2011 from the time of each payment through the date of judgment.  If the Court decides this motion in Weyerhaeuser's favor, Weyerhaeuser requests leave to present the applicable interest calculation based on the date of judgment.

V.      **CONCLUSION**

The Court should grant Weyerhaeuser's motion for summary judgment.  The Court has already, and correctly, determined that the Sale contracts assign Domtar responsibility for the workers compensation liability at issue here.  Weyerhaeuser has not waived its rights to enforce those contracts.  It simply, and temporarily, credited Domtar's mistaken contract interpretation for a period of time.  That mistake is not waiver under Delaware law.  The Court should enter summary judgment for Weyerhaeuser, order Domtar to accept full responsibility for Retired Employee workers compensation claims going forward, order Domtar to assume the

administration of both Transferred and Retired Employee workers compensation claims, award Weyerhaeuser $1,088,860.69 in damages, and grant Weyerhaeuser leave to present a current calculation of prejudgment interest.

September 25, 2015

OF COUNSEL:

Laurie Lootens Chyz, WSBA #14297
Michael J. Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
(206) 623-1745
llc@hcmp.com;
mje@hcmp.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Attorneys for Plaintiff,
Weyerhaeuser Company