# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------------x
:
WEYERHAEUSER COMPANY, a Washington
corporation,                                                          :

                  Plaintiff,              :   C.A. No. 14-00024-SLR

      v.                                                          :   REDACTED
                            PUBLIC VERSION

DOMTAR CORPORATION, a Delaware corporation,     :
and DOMTAR PAPER COMPANY, LLC, a Delaware
limited liability company,                                            :

              Defendants.             :

-----------------------------------------------------------------------x


## DEFENDANTS DOMTAR CORPORATION AND DOMTAR PAPER COMPANY, LLC's OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


OF COUNSEL:

Gary W. Kubek
Courtney M. Dankworth
Alex Ginsberg
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
gwkubek@debevoise.com
cmdankwo@debevoise.com
aginsber@debevoise.com

Dated: September 25, 2015

Gregory P. Williams (#2168)
Chad M. Shandler (#3796)
Katharine C. Lester (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Williams@rlf.com
Shandler@rlf.com
lester@rlf.com

*Attorneys for Defendants Domtar Corporation
and Domtar Paper Company, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITES ................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 1

STATEMENT OF UNDISPUTED FACTS .................................................................... 3

    A.     The Transaction ........................................................................................ 3

    B.     The Post-Closing Dispute .......................................................................... 4

    C.     The September 11, 2008 Montreal Meeting ............................................... 5

    D.     Weyerhaeuser's Conduct After the Montreal Meeting .............................. 6

    E.     Weyerhaeuser Belatedly Reverses Its Position ......................................... 8

    F.     Asbestos-Related Claims ........................................................................... 9

ARGUMENT .................................................................................................................. 10

    A.     Summary Judgment Is Appropriate Because There Is No Dispute as to
           Any Material Fact Relating to Domtar's Defenses. .................................. 10

    B.     Weyerhaeuser Waived Its Right To Receive Reimbursement from Domtar
           for Non-Transferred Employee Claims. .................................................... 10

    C.     Weyerhaeuser Acquiesced To Its Responsibility for Non-Transferred
           Employee Claims. ..................................................................................... 16

    D.     Giardini's Use of the Phrase "Without Prejudice" Does Not Obviate
           Weyerhaeuser's Unequivocal Statements and Actions. ............................ 17

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................10

*Archway Ins. Servs., LLC v. James River Ins. Co.*,
    No. CIV.A. 09-2711, 2011 WL 6210682 (E.D. Pa. Dec. 14, 2011) ...........................11

*Balin v. Amerimar Realty Co.*,
    C. A. 12896, 1996 WL 684377 (Del. Ch. Nov. 15, 1996)...........................................16

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
    402 U.S. 313 (1971)....................................................................................................17

*Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571 (Del. Ch. 1998)...................................16

*In re Chocolate Confectionary Antitrust Litig.*, No. 14-2790,
    2015 WL 5332604 (3d Cir. 2015)...............................................................................10

*Julian v. E. States Const. Serv., Inc.,* No. CIV. A. 1892-VCP,
    2009 WL 1211642 (Del. Ch. May 5, 2009)................................................................11

*Julin v. Julin*, 787 A.2d 82 (Del. 2001) ............................................................................16

*Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) ................................16

*Norberg v. Security Storage Co. of Washington*, No. 12885,
    2000 WL 1375868 (Del. Ch. Sept. 19, 2000) .............................................................11

*NTC Grp., Inc. v. W. Point-Pepperell, Inc.*,
    CIV. A. No. 10665, 1990 WL 143842 (Del. Ch. Sept. 26, 1990) ..............................16

*Prizm Grp., Inc. v. Anderson, C.A.*, No. 4060-VCP,
    2010 WL 1850792 (Del. Ch. May 10, 2010)..........................................................11, 12

*Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*,
    No. CIV. 07-666 (WHW), 2009 WL 3334823 (D.N.J. Oct. 13, 2009) ................11, 17

*Univ. of Alabama Bd. of Trs. v. New Life Art, Inc.*,
    No. 7:05-CV-0585-AKK, 2013 WL 5442191 (N.D. Ala. Sept. 27, 2013).................16

*Vila v. BVWebTies LLC*, No. CIV.A. 4308-VCS,
    2010 WL 3866098 (Del. Ch. Oct. 1, 2010) ................................................................11

**STATUTES & RULES**

15 U.S.C. § 78m(b)(2) .......................................................................................................13

Fed. R. Civ. P. 56(a) ........................................................................................................10

**CANADIAN CASES**

*Gaglardi v. Gaglardi*, 1992 CarswellBC 709 (Can. B.C.S.C.)...........................................18

*K. (R.) v. K. (S.)*, (2005) 57 Alta. L.R. 4th 95 (Can. Alta. Q.B.) ......................................18

*Leonardis v. Leonardis,* (2003) 50 Alta. L.R. 4th 56 (Can. Alta. Q.B.)...........................18

**OTHER AUTHORITIES**

Adam Dodek, "Solicitor-Client Privilege in Canada," (February 2011)...........................18

## NATURE AND STAGE OF THE PROCEEDINGS

On January 13, 2014, Plaintiff Weyerhaeuser Company ("Weyerhaeuser") filed a complaint (the "Complaint") against Defendants Domtar Corporation and Domtar Paper Company, LLC (together, "Domtar") contending that Domtar breached certain contractual obligations regarding workers compensation liabilities that it allegedly assumed in connection with its acquisition of Weyerhaeuser's fine paper business (the "Fine Paper Business") in March 2007.  D.I. 1.

On February 21, 2014, Domtar moved to dismiss the Complaint.  D.I. 12.  On July 30, 2014, this Court denied in part and granted in part Domtar's motion.  D.I. 18.  This Court ruled that the contracts assigned to Domtar the responsibility for the post-sale workers compensation claims of employees of the Fine Paper Business who had retired or left employment with Weyerhaeuser and thus never became employees of Domtar ("Non-Transferred Employees").  *Id*. at 4–8.  However, the Court also held that Delaware's three-year statute of limitations for contract claims barred Weyerhaeuser from recovering from Domtar for workers compensation liabilities that accrued before January 13, 2011, three years prior to the filing of the Complaint.  *Id*. at 8–11.

Following the decision on the Motion to Dismiss, Domtar answered and asserted affirmative defenses.  D.I. 20.  The parties have now completed discovery, and Domtar submits this motion for summary judgment in accordance with the Court's scheduling order.  D.I. 23.

## SUMMARY OF ARGUMENT

Summary judgment should be granted dismissing Weyerhaeuser's claim for reimbursement of amounts it paid for workers compensation claims filed by the Non-Transferred Employees because Weyerhaeuser, through its express statements and its conduct from late 2008

through 2011, long before it filed this action, waived any contractual rights to such reimbursement and acquiesced in Domtar's position that it was not responsible for those claims.

Domtar does not here contest (although it reserves its rights on appeal) this Court's ruling on the motion to dismiss that the agreements governing the sale of the Fine Paper Business allocated liability for these claims to Domtar.  However, that decision, which was based solely on the terms of the agreements, did not and could not address Domtar's separate fact-dependent defenses, based on Weyerhaeuser's conduct during the years following the sale of the Fine Paper Business, that Weyerhaeuser gave up any rights that it may have had under the agreements. Now, following discovery, the undisputed facts establish that Weyerhaeuser, with full knowledge of the parties' respective positions, agreed in November 2008 that Domtar's interpretation of those agreements was correct and that Domtar had assumed liability only for employees who came to work for Domtar.  Weyerhaeuser not only conveyed its express agreement with Domtar's position in a letter from its lead negotiator, but confirmed this position by revising invoices previously sent to Domtar to include workers compensation claims only for employees who came to work for Domtar.  Weyerhaeuser also revised its own internal accounting records to reduce Domtar's liability related to the sale transaction by more than $9 million and the outstanding receivable for workers compensation invoices by more than $3 million, all to reflect that "a significant number of claims will remain with Weyerhaeuser."

Weyerhaeuser acted in accordance with this position for more than three years, invoicing Domtar only for payments made on claims by employees who came to work for Domtar, until early 2012, when Weyerhaeuser began tendering workers compensation claims filed by Non-Transferred Employees.  As explained below, even assuming that the transaction agreements allocated responsibility for these claims to Domtar, Weyerhaeuser's prior statements and conduct

2

constitute both waiver and acquiescence, which bar Weyerhaeuser from pursuing the contractual claim that it previously surrendered.

## STATEMENT OF UNDISPUTED FACTS

### A.     The Transaction

On March 7, 2007, Weyerhaeuser transferred its Fine Paper Business to Domtar in a series of transactions (the "Sale") governed, in all relevant respects, by an Amended and Restated Contribution Agreement (the "Contribution Agreement") and an Amended and Restated Transaction Agreement (the "Transaction Agreement," and together with the Contribution Agreement, the "Agreements"), both dated as of January 25, 2007.  Delaware law governs both Agreements.

Only one provision of the Agreements expressly addressed liability for workers compensation claims, and it dealt with only a small subset of the Fine Paper Business's employees.  Section 6.09(a)(iii) of the Transaction Agreement provided that Domtar would become responsible for workers compensation claims by U.S. employees of the Fine Paper Business who were not actively working, and were receiving workers compensation payments at the time of the Sale, only if they returned to work for Domtar after the Sale and thus became "Transferred Employees."  Ex. 1[1] § 6.09(a)(iii).[2]  If such employees never went to work for

---

[1]    Documents cited herein are submitted as exhibits to the Declaration of Alex Ginsberg, sworn to September 25, 2015, and referred to as "Ex. __."

[2]    "Newco Employees employed in the United States who are absent from work and receiving workers compensation benefits related to such absence ('U.S. WC Newco Employees') will not become Transferred Employees until such time, if any, as they are determined by the relevant insurer to be able to return to employment and present themselves for re-employment . . . . Prior to such time, Weyerhaeuser shall retain all liability with respect to providing workers compensation benefits to U.S. WC Newco Employees to the extent the U.S. WC Newco Employees are eligible to receive such benefits."

Domtar and thus did not become Transferred Employees, Weyerhaeuser remained responsible for their claims.  *Id.*

This provision's focus on, and allocation of, this small subset of workers[3] makes sense— indeed it only makes sense—if the parties contemplated that Domtar would assume responsibility only for claims by U.S. employees who worked for Domtar after the Sale and that Weyerhaeuser would retain responsibility for workers compensation claims made after the Sale by former employees of the Fine Paper Business who had retired or otherwise left employment before the Sale and thus never worked for Domtar.  These former employees, identified as "Retired Employees" in the Complaint, are more correctly referred to herein as "Non-Transferred Employees."

However, whatever the parties may have contemplated, the Court ruled, in its decision on the motion to dismiss, that under the plain language of Section 2.03(a) of the Contribution Agreement, Domtar assumed all liabilities of the Fine Paper Business except those expressly retained by Weyerhaeuser, and thus Domtar was responsible under the Agreements for all workers compensation claims except those filed by the small number of employees whose claims were retained by Weyerhaeuser under Section 6.09 of the Transaction Agreement.

### B.     The Post-Closing Dispute

Almost immediately after the Sale, the parties disagreed about the workers compensation liabilities.  On April 17, 2007, Weyerhaeuser informed Domtar that it was claiming a $13.6 million liability, which included present and future workers compensation claims of both Transferred Employees and Non-Transferred Employees, as part of the proposed post-closing working capital adjustment.  Ex. 3 at 576–77.  Domtar objected that it never assumed that entire

---

[3]     This group consisted of only eleven employees, who had filed twelve workers compensation claims.  Ex. 2.

4

liability.  *Id.* at 575–76.  Gilles Pharand, then Domtar's Senior Vice President, Law and

Corporate Affairs, memorialized that objection in a letter, dated June 6, 2007, to Weyerhaeuser's

General Counsel, Sandy McDade.  Ex. 4 at 682.  McDade replied on July 23, 2007, setting forth

Weyerhaeuser's position that Domtar was liable for all workers compensation claims, except for

the small group of employees who were absent from work and receiving workers compensation

benefits on the date of the Sale, and had not yet joined Domtar.  Ex. 5 at 10206.

Beginning in or about August 2007, Weyerhaeuser began to invoice Domtar for workers

compensation claims that included payments for Non-Transferred Employees.  *See, e.g.,* Ex. 6 at

588; Ex. 7.  Domtar, consistent with its position, did not pay these invoices.  Weyerhaeuser

acknowledged in October 2007 that "Domtar and WY do not agree on the treatment of certain

US workers compensation liabilities" and that "the issue remains to be resolved" at a meeting

that was not yet scheduled.  Ex. 8 at 671.

### C.      The September 11, 2008 Montreal Meeting

During 2008, the parties exchanged correspondence concerning various post-closing

disputes, including responsibility for workers compensation claims by Non-Transferred

Employees.  On June 3, 2008, Anne Giardini, then the Vice President and General Counsel (later

the President) of Weyerhaeuser's Canadian subsidiary, who had responsibility for various post-

closing matters, Ex. 9, Giardini Dep. 20:23–21:21, reiterated Weyerhaeuser's position in a letter

summarizing the issues to be discussed in a proposed meeting between the parties.  Ex. 10 at

11326–27.  Domtar requested additional information, Ex. 11 at 4550, and the issue was included

in the agenda for a meeting in Montreal on September 11, 2008, during which the parties

discussed various outstanding post-closing issues.  Ex. 12 at 24096.

The testimony of all five witnesses who attended that meeting is consistent with the only

set of contemporaneous notes, prepared by Domtar's Vice President, Financial Reporting and

5

Compliance, Michael Cross, which state that after a discussion, Weyerhaeuser's representatives agreed with Domtar's position regarding workers compensation liabilities, but said they needed to discuss it further internally. Ex. 13 at 11857_0002–0003. Patrick Lane, Weyerhaeuser's transition manager for the Sale, testified that Domtar presented its position and "we [Weyerhaeuser] didn't have a counter that said why they were wrong." Ex. 14, Lane Dep. 48:21–49:10. Giardini recalled having found Zygmunt Jablonski's views "persuasive."[4] Ex. 9, 67:8–14. *See also* Ex. 15, Cross Dep. 47:22–48:10 (Weyerhaeuser agreed to Domtar's position); Ex. 16, Jablonski Dep. 76:19–77:5 (no independent recollection but the notes are "consistent with Weyerhaeuser's subsequent actions"); Ex. 17, Dagenais Dep. 46:23–49:19 (parties said they would think further and Weyerhaeuser later sent a letter saying it agreed with Domtar's position).

## D.   Weyerhaeuser's Conduct After the Montreal Meeting

Beginning shortly after the Montreal meeting, and continuing for more than three years, Weyerhaeuser demonstrated by its communications and conduct—both with Domtar and internally—that it had accepted Domtar's position regarding the allocation of workers compensation liabilities.

*First*, Weyerhaeuser communicated its acceptance of Domtar's view to Domtar in a series of letters following the Montreal meeting. On September 23, 2008, Giardini wrote Jablonski to explain—as it turned out, erroneously—that "Weyerhaeuser has been invoicing Domtar only for Workers' Compensation for transferred employees . . . ." Ex. 18 at 22317. On October 28, 2008, Lane emailed Cross to clarify that "our invoices were not consistent with the definition of 'transferred employee' we talked about in Montreal." Ex. 19 at 923. Shortly

---

[4]   Jablonski was then Vice President, Legal Services, and became Senior Vice President and General Counsel in early 2009 after Pharand retired. Ex. 16, Jablonski Dep. 15:5–11.

thereafter, Lane instructed Kim Eckroth, Weyerhaeuser's Benefits Manager, to inform Domtar

that revised invoices would be issued, explaining:

> [M]y understanding is that our previous invoices were based on our understanding
> that all workers compensation liability transferred to Domtar – whereas our
> September discussions with Domtar clarified that the workers compensation
> liability went to Domtar ONLY for employees that showed up to work at Domtar.
> . . .

Ex. 20 at 20136 (emphasis in original).

On November 26, 2008, Giardini, who was Weyerhaeuser's lead representative at the

Montreal meeting, corrected her September 23 letter and confirmed Lane's statement that prior

invoices had improperly included claims by Non-Transferred Employees.  Ex. 21 at 22326.  She

then stated unequivocally, "In fact, we are all agreed that US workers compensation liability

went to Domtar only for employees who became able to work in some capacity at Domtar."  *Id.*

*Second,* Weyerhaeuser created and submitted to Domtar a list of Transferred Employees,

as well as revised invoices for post-Sale workers compensation claims that included *only* claims

for Transferred Employees and did not include claims for the Non-Transferred Employees.  *See*

Ex. 14, 50:16–52:12; Ex. 22, Wong Dep., 68:11–75:8; Ex. 23.  Domtar paid these revised

amounts, which Weyerhaeuser acknowledged represented payment of all outstanding amounts

due.  Ex. 24 at 23885.

*Third*, on October 20, 2008, Weyerhaeuser made a formal adjustment to its own

corporate accounting records to reflect the reversal of approximately $9.3 million in workers

compensation liability, which was previously recorded as a receivable to be paid by Domtar, to

reflect that it would instead remain a Weyerhaeuser liability.  Ex. 25 at 19048–49.

Weyerhaeuser's official SigNAL [Significant & Non-Routine Approval Letter] Notification

stated that "all the Workers Compensation (WC) claims as of February 2007 [the time of the

7

Sale], were reviewed to determine whether the claimants transferred to Domtar at the close of the

transaction," and "[a]s a result, the revised WC liability that was recorded . . . should be $4.3

MM, a decrease of $9.2 MM." *Id.* at 19049. *See also* Ex. 22, 32:15–21 (entry reflected a

"change in the liability amount . . . owed by Domtar"). In addition, "the invoices [already issued

to Domtar] for WC payments were reviewed," and "[r]evising the list of claims that should

transfer to Domtar, a significant number of claims will remain with Weyerhaeuser." Ex. 25 at

19049. Accordingly, "the outstanding WC receivable balance" owed by Domtar was also

decreased, from $4.8 million to $1.4 million. *Id.*

For more than three years thereafter, Weyerhaeuser invoiced Domtar only for claims filed

by Transferred Employees, and Domtar paid those invoices. *See, e.g.*, Ex. 14, 66:23–67:3,

188:22–189:5; Ex. 26 ("it looks like Domtar is current with their invoice payments" as of Oct.

10, 2012). Although the parties continued to discuss administration of workers compensation

claims by the *Transferred* Employees (which Weyerhaeuser had self-insured and Domtar could

not directly assume because of regulatory issues in certain states), Weyerhaeuser did not contend

that Domtar was responsible for claims by the Non-Transferred Employees. *See, e.g.,* Ex. 27 at

22331. Giardini's list of "issues for resolution" at a proposed meeting (eventually held in

December 2009) expressly stated, under the heading "U.S. Employees on Workers

Compensation," that "[a]t issue is Weyerhaeuser's management of [workers compensation]

files," but "all past workers compensation invoices have been reconciled." Ex. 28 at 22338.

### E.     Weyerhaeuser Belatedly Reverses Its Position

After acting for more than three years in accordance with its agreement that Domtar was

*not* responsible for workers compensation claims relating to Non-Transferred Employees,

Weyerhaeuser abruptly changed its position in January 2012. Weyerhaeuser began tendering

claims for Non-Transferred Employees and asserted, for the first time since before the September

2008 meeting, that Domtar was responsible for such Non-Transferred Employee claims.  Ex. 29

at 18759.  Weyerhaeuser thereafter continued to submit similar tenders, *e.g.*, Ex. 30, and Domtar

consistently rejected the tendered claims and reiterated that it was responsible only for claims

made by Transferred Employees.  *E.g.*, Ex. 31.  On July 8, 2013, Weyerhaeuser wrote Domtar

stating its intent to litigate, claiming that Domtar owed Weyerhaeuser more than $8 million for

claims paid before December 31, 2012, and that actuarial projections of future claims totaled

approximately $6 million.  Ex. 32 at 22058.  Domtar rejected Weyerhaeuser's claim, Ex. 33, and

after waiting six months, Weyerhaeuser filed the Complaint in January 2014, asserting past and

"future" (post-December 2012) claims in the same amounts.[5]  *See* Complaint, D.I. 1.

### F.  Asbestos-Related Claims

The majority of the claims tendered by Weyerhaeuser since the beginning of 2012

involved injuries allegedly caused by exposure to asbestos at the Plymouth, North Carolina

facility.  Section 2.03(b)(viii) of the Contribution Agreement provides that Weyerhaeuser

retained "all Liabilities to the extent arising out of (x) any exposure to asbestos or asbestos-

containing materials present in products formerly manufactured at facilities now or formerly

owned [by Weyerhaeuser] or (y) the pre-closing manufacture of these products at such

facilities."  Ex. 34 at §2.03(b)(viii).  ████████████████████████████████

████████████████████████████████████████

---

[5]   The Complaint also alleged that Domtar has failed to reimburse Weyerhaeuser for expenses
incurred in administering on Domtar's behalf workers compensation claims by the
Transferred Employees.  As noted above, Domtar has been unable to assume administration
of these claims directly, so Weyerhaeuser has continued to handle them, using a third-party
administrator.  Domtar has not denied liability for these third-party administrative expenses
paid by Weyerhaeuser with respect to claims by Transferred Employees, and in fact paid all
such invoices submitted by Weyerhaeuser (which were only two).  In August 2015,
Weyerhaeuser submitted a new invoice for $1,150, which Domtar will pay upon receipt of
documentation from the third-party administrator.  Domtar therefore does not seek summary
judgment with respect to this small part of Weyerhaeuser's claim.

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

## ARGUMENT

**A.      Summary Judgment Is Appropriate Because There Is No Dispute as to Any Material Fact Relating to Domtar's Defenses.**

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *In re Chocolate Confectionary Antitrust Litig.*, No. 14-2790, 2015 WL 5332604, at *6 (3d Cir. Sept. 15, 2015).  In this case, the facts relevant to Domtar's defenses that Weyerhaeuser waived its contractual rights and acquiesced in Domtar's interpretation of the Agreements are not in dispute.  For the reasons set forth below, Domtar should be granted summary judgment as a matter of law.[6]

**B.      Weyerhaeuser Waived Its Right To Receive Reimbursement from Domtar for Non-Transferred Employee Claims.**

The course of conduct between the parties—the material facts of which are undisputed— demonstrates that Weyerhaeuser knowingly waived any right to reimbursement from Domtar for

---

[6]    If the Court concludes that there are disputed facts that prevent the entry of summary judgment for Domtar, the Court should similarly find that such disputed facts require denial of Weyerhaeuser's anticipated summary judgment motion.  In addition, although the Court need not consider or rely on the asbestos-related provisions of the Contribution Agreement to grant Domtar's motion, the existence of disputed facts with respect to the asbestos-related workers compensation claims would provide an independent basis for denying Weyerhaeuser's motion, as will be addressed in Domtar's opposition to that motion.

workers compensation claims pertaining to Non-Transferred Employees.

To establish waiver, one must show that the other party "voluntarily and intentionally relinquished a known right." *Julian v. E. States Const. Serv., Inc.,* No. CIV. A. 1892-VCP, 2009 WL 1211642, at *8 (Del. Ch. May 5, 2009). It requires "proof that a person [waiving] (1) had knowledge of all material facts relating to his rights and (2) intended to relinquish such rights voluntarily." *Prizm Grp., Inc. v. Anderson, C.A.*, No. 4060-VCP, 2010 WL 1850792, at *6 (Del. Ch. May 10, 2010); *see also Norberg v. Security Storage Co. of Washington*, No. 12885, 2000 WL 1375868, at *7 (Del. Ch. Sept. 19, 2000). "The rule that one may waive his contractual rights 'rest[s] on an idea no more complicated than that any competent adult can abandon a legal right and if he does so he has lost it forever.'" *Vila v. BVWebTies LLC*, No. CIV.A. 4308-VCS, 2010 WL 3866098, at *10 n.72 (Del. Ch. Oct. 1, 2010).

A waiver may be express or implied, although it must be unequivocal. *Archway Ins. Servs., LLC v. James River Ins. Co.*, No. CIV.A. 09-2711, 2011 WL 6210682, at *9 (E.D. Pa. Dec. 14, 2011) *aff'd sub nom. Archway Ins. Servs. v. James River Ins. Co.*, 507 F. App'x 270 (3d Cir. 2012). The intention to waive "may be spelled out from a state of facts exhibiting full knowledge of the circumstances producing a right and continuing indifference to exercise of that right." *Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*, No. CIV. 07-666 (WHW), 2009 WL 3334823, at *3 (D.N.J. Oct. 13, 2009). For example, in *Prizm Group*, the court found that the plaintiff had impliedly "waived his right to challenge the [board of directors'] cancellation of his [s]hares" where he had, years earlier, received a letter explaining that his shares had been cancelled, discussed with his lawyers the viability of a claim against the board and "consciously chose not to pursue any action." *Prizm Group*, 2010 WL 1850792, at *6; *see also Norberg*, 2000 WL 1375868, at *7.

11

The undisputed facts of Weyerhaeuser's conduct, as described above, establish both elements of waiver.

*First*, Weyerhaeuser's conduct following Domtar's acquisition of the Fine Paper Business plainly demonstrates that it "had knowledge of all material facts relating to [its] rights." *Id*. Weyerhaeuser initially sought to impose liability on Domtar for *all* workers compensation claims through a proposed $13.6 million working capital adjustment, and invoiced Domtar for *all* claims, including those of Non-Transferred Employees, for more than a year after the Sale. Domtar expressly disclaimed responsibility for the Non-Transferred Employees, so Weyerhaeuser was fully aware of the dispute and the parties' respective positions. *See* pp. 5–6, *supra*.

*Second*, Giardini's November 26, 2008 letter to Domtar, and Weyerhaeuser's other statements and conduct for more than three years following the parties' September 11, 2008 meeting, establish that Weyerhaeuser "intended to relinquish [its] rights voluntarily," the second of the two requisite elements of waiver. *Prizm Group*, 2010 WL 1850792, at *6. The following undisputed facts demonstrate this waiver:

- On October 20, 2008, Weyerhaeuser adjusted its formal accounting records to eliminate $9.25 million in workers compensation liability previously charged against Domtar, to reflect that amount as a Weyerhaeuser liability. In addition, the outstanding workers compensation receivable for claims already invoiced to Domtar was reduced from $4.8 million to $1.4 million, because "a significant number of claims will remain with Weyerhaeuser." Ex. 25 at 19048–49. Weyerhaeuser's records indicate that the accounting changes were made "To correct gain/loss for Domtar Workers' Compensation claims." *Id.*

12

Weyerhaeuser was and is a public company, required to maintain accurate books and records.  *See* 15 U.S.C. § 78m(b)(2).

- On November 4, 2008, Lane instructed Weyerhaeuser's benefits manager to inform Domtar that revised invoices would be issued because "our previous invoices were based on our understanding that all workers compensation liability transferred to Domtar – whereas our September discussions with Domtar clarified that the workers compensation liability went to Domtar ONLY for employees that showed up to work at Domtar. . . ."  Ex. 20 at 20136 (emphasis in original).

- Giardini's November 26, 2008 letter acknowledged that prior invoices had improperly included Non-Transferred Employee claims and then expressly stated: "In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar."  Ex. 21 at 22326.

- Weyerhaeuser thereafter created and submitted to Domtar a list of the Transferred Employees and revised invoices for post-Sale workers compensation claims that included *only* claims for those Transferred Employees and did not include claims for the Non-Transferred Employees.  *See* p. 8, *supra*.  When Domtar paid these revised amounts, Weyerhaeuser acknowledged this as payment of all outstanding amounts due.  *Id.*

If Weyerhaeuser had not intended to relinquish its position that claims by Non-Transferred Employees were Domtar's responsibility, it would have continued to bill Domtar for the amounts paid for those claims as they were incurred, rather than waiting more than three years to reassert such claims in early 2012.  In fact, as this Court held in deciding Domtar's motion to dismiss, Weyerhaeuser waited so long to reverse its position with respect to the Non-Transferred Employees that the vast majority of its claims for past payments became barred by

13

the statute of limitations.

Although Giardini asserted in her deposition that during the September meeting she was focusing only on claims by Transferred Employees (which Domtar had already acknowledged were its responsibility) and employees who were on disability and had not returned to work (which the Agreements expressly addressed), and "did not "turn [her] mind" to reimbursement for claims by retired or terminated employees, Ex. 9, 78:3–20, that after-the-fact assertion is belied by the circumstances of the September 2008 meeting, the text of Giardini's November 2008 letter, her own testimony and testimony of others, and documents authored by other Weyerhaeuser witnesses.[7]

First, the correspondence between the parties leading up to the September 2008 meeting framed the dispute as involving responsibility for all Non-Transferred Employees, not just the eleven employees who had been absent and receiving workers compensation at the time of the Sale. Ex. 10 at 11326–27. In addition, Giardini's November 26, 2008 letter demonstrates that she was affirmatively conveying Weyerhaeuser's agreement that Domtar was responsible only for Transferred Employees:

> Our Chee Tuck-Wong has sent to your Michel Dagenais a list of workers compensation payments made on behalf of Transferred Employees from March 2007 to October 2008 and a list of claims (open and closed) where the claimant is a Transferred Employee. *Previous invoices were based on our employees' understanding that all workers compensation liability transferred to Domtar. In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar.*

Ex. 21 at 22326 (emphasis added). Giardini's acknowledgement that this statement "reflects my

. . . understanding of the agreement" in November 2008 is not vitiated by her current assertion

---

[7] Giardini conceded that she has "no independent recollection of the [September 11, 2008] meeting other than attending it," *id*. at 66:20–22, and does not even have an "independent recollection of who [else] attended, *id*. at 71:15–16, so she cannot have any recollection of what she intended by her statements during that meeting.

that her understanding was "incorrect."  Ex. 9, 108:6–13; *see also* Ex. 14, 51:21–52:12 (Giardini instructed Lane to invoice only for the Transferred Employees).

Moreover, the relevant intention is not simply that of Giardini, but that of Weyerhaeuser, which indicated its intention to relinquish its prior position that Domtar was responsible for the claims of Non-Transferred Employees.  In addition to Giardini's letter, Weyerhaeuser not only sent Domtar a revised list showing only the payments made on behalf of Transferred Employees but also re-invoiced Domtar for only those claims.  Ex. 23; Ex. 22, 80:14–81:10.  Lane's email to Weyerhaeuser's benefits manager, copied to Giardini and others, stated unequivocally the reason for the revised list and new invoices: "Just so we're consistent, my understanding is that our previous invoices were based on our understanding that all workers compensation liability transferred to Domtar – whereas our September discussions with Domtar clarified that the workers compensation liability went to Domtar ONLY for employees that showed up to work at Domtar."  Ex. 20 at 20136 (emphasis in original).  Giardini acknowledged that she (an attorney) advised Lane in November 2008 "that workers' compensation liability went to Domtar only for employees that showed up to work at Domtar," although she now believes that her advice was "mistaken."  Ex. 9, 98:4–25.

In addition, as discussed above, Weyerhaeuser revised its accounting records to remove approximately $9.25 million of claimed liability from Domtar and to reduce its outstanding workers compensation receivable balance from Domtar by $3.4 million.  Ex. 25.

In sum, the record establishes that Weyerhaeuser knowingly waived any contractual right to hold Domtar liable for workers compensation claims relating to the Non-Transferred Employees in November 2008, confirmed that waiver through its conduct over the next three years, and thus should not be permitted to assert claims now for workers compensation liability

relating to Non-Transferred Employees.

### C.    Weyerhaeuser Acquiesced To Its Responsibility for Non-Transferred Employee Claims.

Acquiescence, a defense similar to waiver, "arises where a complainant has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998) (quoting *NTC Grp., Inc. v. W. Point-Pepperell, Inc.*, CIV. A. No. 10665, 1990 WL 143842, at *5 (Del. Ch. Sept. 26, 1990)).  The defense of acquiescence can be established even *without* proof of the party's conscious intent to waive its rights; it is the party's objective action, or lack thereof, not its subjective intent, that governs.  "For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice." *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (former CEO's conduct indicated acquiescence to his removal).  Courts have held that plaintiffs have acquiesced to an opposing party's position where they accepted alternative payment arrangements with knowledge of the terms of the relevant agreement.  *See Julin v. Julin*, 787 A.2d 82, 84 (Del. 2001); *Balin v. Amerimar Realty Co.*, C. A. 12896, 1996 WL 684377, at *19–20 (Del. Ch. Nov. 15, 1996).

The facts discussed above with respect to waiver also support a finding of acquiescence.[8]

---

[8]    Although Domtar did not assert acquiescence (which is not listed in Fed. R. Civ. P. 8(c)) as a separate affirmative defense, Weyerhaeuser has been on notice of Domtar's contention that Weyerhaeuser, through its statements and other conduct, agreed to Domtar's position and thus gave up any contractual right it may have had to hold Domtar liable for claims by the Non-Transferred Employees.   Furthermore, the same undisputed facts support both waiver and acquiescence, and Weyerhaeuser would not be prejudiced by this Court's consideration of both defenses.  *See, e.g.*, *Univ. of Alabama Bd. of Trs. v. New Life Art, Inc.*, No. 7:05-CV-0585-AKK, 2013 WL 5442191, at *8 (N.D. Ala. Sept. 27, 2013) ("[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that

16

In particular, Giardini's November 26, 2008 letter and Weyerhaeuser's subsequent modification of invoices objectively demonstrate Weyerhaeuser's recognition of Domtar's position and failure to pursue any perceived right to reimbursement from Domtar for workers compensation liabilities pertaining to Non-Transferred Employees.  Regardless of Weyerhaeuser's intent, its acceptance of Domtar's position, its processing of claims consistently with that position, and its failure to reject such claims or otherwise to offer any objection for over three years constitute acquiescence to Domtar's position that liabilities relating to Non-Transferred Employees remained with Weyerhaeuser following the Sale.

### D. Giardini's Use of the Phrase "Without Prejudice" Does Not Obviate Weyerhaeuser's Unequivocal Statements and Actions.

Weyerhaeuser cannot salvage its claim by arguing that Giardini's agreement in her November 26, 2008 letter that Domtar had assumed liability only for claims by Transferred Employees is not binding because she included the phrase "Without Prejudice" on the first page of the letter.  Ex. 21 at 22324.  This argument is without merit, as it would require the Court to interpret the November 26, 2008 letter based on a boilerplate label rather than the substance of the letter, and in a manner at odds with both that substance and Weyerhaeuser's subsequent course of conduct.  It is the nature of the communication, not the label placed on the document, that is dispositive of its meaning.

The phrase "without prejudice" is not commonly used in this context by U.S. lawyers, but is sometimes used by Canadian lawyers to designate a position as non-binding and privileged

_____

may be raised at trial so that he or she is prepared to properly litigate it" (citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.,* 402 U.S. 313, 350 (1971)); *Turner*, 2009 WL 3334823, at *4 n.3 (refusing to strike waiver defense that was not pleaded because waiver implicated similar facts as defenses that were asserted and plaintiff suffered no prejudice). Alternatively, if the Court considers it necessary or appropriate, Domtar would request that the pleadings be deemed amended (or that it be permitted to amend its answer) to include an affirmative defense of acquiescence, consistently with the facts adduced in discovery.

17

against use in litigation, similarly to the designation of statements as subject to Fed. R. Evid. 408. However, Canadian cases hold that "without prejudice" cannot be applied indiscriminately to communications, but instead must be evaluated in light of the communication's purpose and context. *See Gaglardi v. Gaglardi*, 1992 CarswellBC 709, para. 20 (Can. B.C.S.C.) (WL) (letter not privileged where it contained no settlement offer, "notwithstanding that it is marked 'without prejudice'"); *Leonardis v. Leonardis*, (2003) 50 Alta. L.R. 4th 56, para. 6 (Can. Alta. Q.B.) ("[I]t is the contents of the communication that determine if it is privileged, not the way it is labelled.") (collecting cases); *K. (R.) v. K. (S.)*, (2005) 57 Alta. L.R. 4th 95, para. 6 (Can. Alta. Q.B.) ("Merely marking a letter 'without prejudice' does not make it privileged, unless the contents are actually privileged."); *see also* Adam Dodek, "Solicitor-Client Privilege in Canada," at 10 (February 2011) ("However, it is not the 'Without Prejudice' label that triggers settlement privilege but rather the content of the communication which must be in furtherance of an attempt to settle a dispute. Like the label 'Privileged,' the invocation of 'Without Prejudice' is often overused by lawyers and in and of itself does not guarantee that the correspondence will not be disclosed in subsequent litigation.").[9]

Here, although the November 26, 2008 letter does set forth positions with respect to several then-unresolved issues that could properly be subject to protection as part of a settlement negotiation, *see*, *e.g.*, Items 2 (Kerfoot), 3 (Early retirement subsidy), 4 (IT Transition Services Agreement), Ex. 21 at 22324–26, the statements in Item 5 of the letter with respect to workers compensation liabilities were not merely a proposal for a potential settlement but a clear, explicit and unequivocal statement of agreement with Domtar's position. The phrase "without prejudice" may not be applied indiscriminately to the entire contents of the letter to negate

---

[9] Copies of these Canadian authorities are provided at Exs. 35, 36, 37, and 38.

Giardini's explicit, unconditional statement of agreement with Domtar's position.

Moreover, even if Giardini's letter itself were not binding on Weyerhaeuser, it is merely one piece of the mosaic of internal and external written statements, invoices sent to and paid by Domtar, and revision of Weyerhaeuser's internal accounting records that demonstrate that Weyerhaeuser waived any contractual rights and acquiesced to Domtar's position with respect to liability for workers compensation claims by Non-Transferred Employees.[10]

---

[10]   Weyerhaeuser's claim also finds no support in a 2013 Agreement to Terminate Certain Health and Welfare Transition Services, which Weyerhaeuser's counsel pointed to in deposition questioning.  That agreement by its terms "does not address" the workers compensation claims at issue in this case, Ex. 39 at 15951 (emphasis in original), but provides only that "the Parties reserve all rights with respect to" those claims.  *Id.*  That reservation of both parties' rights could not revive a claim that Weyerhaeuser had already relinquished, but simply deferred resolution of that dispute until a later date, which is now.

## <u>CONCLUSION</u>

For the foregoing reasons, Domtar respectfully requests that the Court grant its Motion

for Summary Judgment and dismiss Weyerhaeuser's Complaint in its entirety, with prejudice,

except with respect to the claim for administrative expenses for Transferred Employees' claims,

as to which Domtar has acknowledged responsibility.


OF COUNSEL:                          _/s/ Chad M. Shandler_____
                                     Gregory P. Williams (#2168)
Gary W. Kubek                        Chad M. Shandler (#3796)
Courtney M. Dankworth                Katharine C. Lester (#5629)
Alex Ginsberg                        Richards, Layton & Finger, P.A.
DEBEVOISE & PLIMPTON LLP             One Rodney Square
919 Third Avenue                     920 N. King Street
New York, New York 10022             Wilmington, DE 19801
(212) 909-6000                       (302) 651-7700
gwkubek@debevoise.com                williams@rlf.com
cmdankwo@debevoise.com               shandler@rlf.com
aginsber@debevoise.com               lester@rlf.com

                                     *Attorneys for Defendants Domtar Corporation*
Dated: September 25, 2015            *and Domtar Paper Company, LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2015, I caused true and correct copies of the foregoing document to be filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following, and further certify that a copy of the foregoing document has also been served by electronic mail on the following:

Stephen B. Brauerman (#4952)
Evan T. Miller (#5364)
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Laurie Lootens Chyz
Michael J. Ewart
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101-2925
(206) 623-1745
llc@hcmp.com
mje@hcmp.com

*/s/ Chad M. Shandler*
Chad M. Shandler (#3796)