**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

WEYERHAEUSER COMPANY, a Washington corporation

Plaintiff,

v.

DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company,

Defendants.

C.A. No. 14-24-SLR

**REDACTED VERSION**

# WEYERHAEUSER COMPANY'S ANSWERING BRIEF IN OPPOSITION TO DOMTAR'S MOTION FOR SUMMARY JUDGMENT

October 13, 2015

**Redacted Version Filed: October 20, 2015**

OF COUNSEL:

Laurie Lootens Chyz, WSBA #14297
Michael J. Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
(206) 623-1745
llc@hcmp.com;
mje@hcmp.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Attorneys for Plaintiff,
Weyerhaeuser Company

# TABLE OF CONTENTS

Page

I.INTRODUCTION1

II.ARGUMENT2

A. Weyerhaeuser Did Not Waive Its Rights under the Contracts . . . . . . . . . . . . . . . . 2

1. Waiver cannot be based on Weyerhaeuser's conduct . . . . . . . . . . . . . . . . 2

2. Anne Giardini did not intend to waive a contractual right . . . . . . . . . . . . 4

3. Giardini marked her letter "Without Prejudice" to avoid waiving any rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4. Any waiver would not apply after January 2012 . . . . . . . . . . . . . . . . . . . . 7

B. Weyerhaeuser's Claims Are Not Barred By Acquiescence . . . . . . . . . . . . . . . . . 8

1. Domtar did not plead acquiescence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2. Acquiescence is based on conduct, and does not apply here . . . . . . . . . . 8

3. Acquiescence requires full knowledge of one's rights, and does not apply here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4. Domtar did not detrimentally rely on Weyerhaeuser's conduct, so acquiescence does not apply, and certainly does not apply after January 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C. [redacted] 11

III.CONCLUSION13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
871 A.2d 428 (Del. 2005) . . . . . . . . 2

*Amirsaleh v. Board of Trade of City of New York, Inc.*,
27 A.3d 522 (Del. 2011) . . . . . . . . 7, 11

*Balin v. Amerimar Realty Co.*,
CIV. A. No. 12896, 1996 WL 684377 . . . . . . . . 10

*Cantor Fitzgerald, L.P. v. Cantor*,
724 A.2d 571 (Del. Ch. 1998) . . . . . . . . 8, 9, 11

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
No. 5140-CS, 2012 WL 3201139 . . . . . . . . 3

*Davis v. Mitchell*,
628 A.2d 657 (Me. 1993) . . . . . . . . 10

*In re Celera Corp. Shareholder Litig.*,
No. 6304-VCP, 2012 WL 1020471 (Del. Ch. 2011) . . . . . . . . 8, 9

*Jones v. Gardels*,
No. Civ. A. 02-307-JJF, 2006 WL 37039 (D. Del. 2006) . . . . . . . . 8

*Julin v. Julin*,
787 A.2d 82 (Del. 2001) . . . . . . . . 9, 10

*Klassen v. Allegro Dev. Corp.*,
106 A.3d 1035 (Del. 2014) . . . . . . . . 9

*Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc.*,
No. 8321-VCG, 2014 WL 718430 (Del. Ch. 2014) . . . . . . . . 9, 10

*Marta v. Mut. Life Ins. Co. of N.Y.*,
887 F. Supp. 722 (D. Del. 1995) . . . . . . . . 3

*Max 237 v. City of Portland*,
115 Or. App. 342 (1992) . . . . . . . . 4

*Phunware, Inc. v. Excelmind Grp. Ltd.*,
--- F. Supp. 3d ---, Civ. No. 15-216-SLR, 2015 WL 4606668 (D. Del. 2015) . . . . . . . . 3, 4

*Price v. Wilmington Trust Co.*,
1995 WL 317017 (Del. Ch. May 19, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Treatises**

*Black's Law Dictionary* 241 (2d Pocket Ed. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I. INTRODUCTION

In their cross motions for summary judgment, the parties agree about the material facts; they disagree only about the legal consequences of those facts.

The key facts are these:

1. When Weyerhaeuser[1] sold its fine paper business to Domtar in March 2007, Domtar contractually assumed liability for all the disputed workers compensation claims in this lawsuit. (D.I. 18 at 8 (Court's opinion on motion to dismiss).)

2. From shortly after the Sale through this litigation, Domtar consistently misread the contracts, and contended Weyerhaeuser retained liability for the disputed workers compensation claims. (*See*, *e.g.*, D.I. 12, D.I. 18. *See also* D.I. 56 at 2, 4 (reserving right to appeal contract interpretation).)

3. After the Sale, Weyerhaeuser disagreed with Domtar; but, for approximately a three year period, and at Domtar's urging, Weyerhaeuser was mistakenly persuaded by Domtar's interpretation of the contracts, said so, and acted accordingly. (D.I. 56 at 4-9; D.I. 51 at 3-8.)

4. Weyerhaeuser later recognized the parties' mistake and asked Domtar to accept its contractual obligations. Domtar has refused. (D.I. 56 at 8-9; D.I. 51 at 7-8.)

The parties now disagree about the consequences of these facts. Domtar contends that, even if it has contractual responsibility for workers compensation liability, it should be relieved of that obligation because Weyerhaeuser (at Domtar's urging) mistakenly failed to enforce that obligation for three years. Domtar claims Weyerhaeuser waived its rights, or acquiesced to Domtar's position, through its mistake.

---

[1] Capitalized terms not defined herein shall have the meanings attributed to them in Weyerhaeuser's Summary Judgment Opening Brief.

Domtar is wrong. Delaware law requires a waiver to be voluntary, knowing, and intentional. The parties' contracts also require any waiver to be express, in writing, and signed by the waiving party. That did not happen here. Weyerhaeuser did not intentionally waive a contractual right; it mistakenly and temporarily agreed with Domtar that the right did not exist. Both parties simply misread the contracts for a period of time. This is not consistent with waiver or acquiescence, and the Court should enter summary judgment for Weyerhaeuser.

## II. ARGUMENT

### A. Weyerhaeuser Did Not Waive Its Rights under the Contracts

Waiver is the *voluntary* and *intentional* relinquishment of a *known* right. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005). The "standards for proving waiver under Delaware law are 'quite exacting.'" *Id.* (citation omitted). Waiver requires "knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights." *Id.* The facts relied on to prove waiver must be "unequivocal." *Id.*

Domtar cannot meet these standards. Domtar cannot show that Weyerhaeuser unequivocally intended to waive its contractual rights. Domtar can show Weyerhaeuser did not enforce its rights for a time, but that conduct resulted from a mistaken interpretation of the contracts. Moreover, Weyerhaeuser's conduct cannot effect a waiver under the terms of the Sale contracts. To effect a waiver, Weyerhaeuser was required to state, unequivocally and in a signed writing, that it was voluntarily and intentionally relinquishing a known contractual right. The undisputed facts show that Weyerhaeuser did no such thing.

1. Waiver cannot be based on Weyerhaeuser's conduct

In its motion for summary judgment, Domtar focuses primarily on Weyerhaeuser's conduct. (D.I. 56 at 10-16.) Domtar claims that "[t]he course of conduct between the parties—the material facts of which are undisputed—demonstrates that Weyerhaeuser knowingly waived any right to reimbursement from Domtar for workers compensation claims pertaining to Non-Transferred Employees." (*Id.* at 10-11.) Weyerhaeuser's conduct is irrelevant to this analysis.

Under Section 9.10 of the parties' Contribution Agreement, no provisions of the contract "shall be deemed waived, amended, supplemented or modified" unless the waiver "is in writing and signed" by an authorized representative of the waiving party. (D.I. 14 Ex. A.[2]) The existence of Section 9.10 means that "[a] waiver would only be effective if made in writing." *Phunware, Inc. v. Excelmind Grp. Ltd.*, --- F. Supp. 3d ---, Civ. No. 15-216-SLR, 2015 WL 4606668, at *8 (D. Del. 2015) (enforcing a similar provision). This Court enforces provisions such as Section 9.10. *E.g.*, *id.*; *Marta v. Mut. Life Ins. Co. of N.Y.*, 887 F. Supp. 722, 727 (D. Del. 1995). Delaware courts also enforce them because "Delaware is a pro-contractarian state." *E.g.*, *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139, at *26 & nn.209-211. Because the parties agreed that a waiver is effective only if made in a particular writing, Weyerhaeuser's conduct cannot effect a waiver. *E.g.*, *Marta*, 887 F. Supp. at 727 (holding, "as a matter of law," that a party's failure to exercise a contract right could not serve as a basis for finding the party "was surrendering its written contract right" when the contract prohibited waiver by conduct).

[2] Section 9.10 is also attached as Ex. A to the Decl. of Laurie Lootens Chyz in Supp. of Weyerhaeuser Co.'s Opp'n to Domtar's Mot. for Summ. J. ("Second Chyz Decl.").

Even if Weyerhaeuser's conduct were relevant, it was far from "unequivocal," as Domtar must show to prove waiver. In fact, Weyerhaeuser's conduct (including changing invoicing practices and adjusting internal accounting) was entirely consistent with the interpretive *mistake* Anne Giardini testified to making. (Giardini Dep. 98:21-25, 99:25-100:5, attached as Ex. H to D.I. 53 (the "First Chyz Decl.").[3]) Weyerhaeuser's conduct therefore does not unequivocally (or even equivocally) show an intent to waive.

Indeed, Weyerhaeuser's inconsistent conduct is best explained by a mistake, rather than by waiver. Weyerhaeuser had no incentive to waive its rights during the period it failed to enforce them. Weyerhaeuser spent millions of dollars to pay workers compensation claims that belonged to Domtar. Domtar can offer no reasonable explanation (other than mistake) for why Weyerhaeuser would voluntarily make those payments when they were Domtar's contractual responsibility.

In fact, waiver is so implausible that Domtar never claimed a waiver until this litigation, even though Weyerhaeuser resumed tendering claims in January 2012. (*E.g.*, Dep. Exs. 143 ¶ 9, 190, 191, 193, 197, 222, and 225, attached as Exs. R-V to the First Chyz Decl.) Until this lawsuit, neither party behaved as if a waiver occurred, so there cannot have been the unequivocal expression of waiver necessary under Delaware law. *See Max 237 v. City of Portland*, 115 Or. App. 342, 346 (1992) (noting that plaintiff's first claim of waiver was made in the litigation, and finding that defendant's letter did not waive defendant's rights where, among other things, evidence of subsequent communications "show[ed] that neither party considered the letter to constitute a waiver").

[3] Except where otherwise noted, all deposition testimony is attached to the First Chyz Decl., D.I. 53, filed in support of Weyerhaeuser's motion for summary judgment.

2. Anne Giardini did not intend to waive a contractual right

Because, under Section 9.10 of the Contribution Agreement, "[a] waiver would only be effective if made in writing," Domtar must rely on Anne Giardini's November 26, 2008 letter to show waiver. *Phunware*, 2015 WL 4606668, at *8. Her letter does not show waiver.

As Domtar acknowledges in its motion, Giardini "agreed in November 2008 that Domtar's interpretation of th[e] agreements was correct." (D.I. 56 at 2.) This is consistent with Giardini's own testimony (Giardini Dep. 67:5-14, 98:21-25, 99:25-100:5), and Domtar's notes from the September 2008 meeting held to discuss the workers compensation dispute, (D.I. 57 Ex. 13 at 11857_0003 (noting that Giardini believed Domtar's position was correct and would go back to discuss interpretation of the agreement with U.S. counsel).) It is also consistent with the language of the letter itself. Giardini wrote that Weyerhaeuser's previous workers compensation invoices "were based on our employees' understanding that all workers compensation liability transferred to Domtar. In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar [i.e., Transferred Employees]." (First Chyz Decl. Ex. 79 at 3.) In those statements, Giardini agreed with Domtar's view of the relevant contract language. She was *not*, for example, voluntarily accepting workers compensation liability even though she disagreed with Domtar. Nor was she horse trading workers compensation liability in exchange for a corresponding concession from Domtar, or agreeing to modify existing contract language to reflect an intentional reshuffling of liabilities. Giardini was simply expressing what she (mistakenly) understood the contracts required. She was not voluntarily and intentionally

accepting for Weyerhaeuser millions of dollars in workers compensation payments she knew to be Domtar's responsibility.[4]

Domtar's suggestion that Giardini intentionally (and for no apparent reason) waived Weyerhaeuser's rights is disingenuous, and inconsistent with its own position from the beginning of this dispute. Domtar did not believe Giardini was handing it a multi-million dollar gift in November 2008; Domtar believed the contracts assigned workers compensation liability to Weyerhaeuser. Domtar attempted (successfully for a time) to convince Weyerhaeuser of that interpretation, and Domtar has held to that interpretation in this litigation. Domtar's temporary success in convincing Giardini does not constitute waiver, and Domtar cannot reasonably claim Weyerhaeuser waived a right Domtar argues never existed.

3. Giardini marked her letter "Without Prejudice" to avoid waiving any rights

Domtar argues that, under Canadian law, marking a letter "Without Prejudice" does not, in all instances, prevent a recipient from relying on all statements in the letter. (D.I. 56 at 17-19.) Even if this were true, a waiver requires Giardini's actual *intention* to relinquish a contractual right, and it is undisputed that she did not intend letters marked "Without Prejudice" to be letters Domtar could or would rely on to Weyerhaeuser's detriment. (*E.g.*, Giardini Dep. 117:3-16; D.I. 52 ("Giardini Decl.") ¶¶ 3-4.) This is not surprising, since Domtar employees shared Giardini's understanding of "Without Prejudice."[5] Domtar also used the designation

[4] In addition, Giardini's comments in the September 2008 meeting and the November 26, 2008 letter did not address the "Retired Employee" claims that are the primary subject of this dispute. (*E.g.*, First Chyz Decl. Ex. 79 at 3; D.I. 57 Ex. 13 at 11857_0003.) Giardini testified that neither party had turned its attention to the potential liabilities associated with Retired Employees (Giardini Dep. 79:6-12), and Domtar witnesses confirmed that Retired Employee claims were not discussed at the September meeting (*e.g.*, Cross Dep. 50:8-51:2, 142:16-19; Dagenais Dep. 42:23-43:6, 45:8-46:7, 46:9-22). This is further indication that Giardini was not intentionally waiving contractual rights the parties knew existed.

[5] Brzezinski Dep. 101:6-9 ("Q: But your understanding is 'without prejudice' means that it's without prejudice to somebody's legal rights; correct? A: That is what it's supposed to mean.");

"Without Prejudice" on correspondence, and when Giardini wanted to rely on Domtar correspondence bearing the "Without Prejudice" designation, she asked Domtar to remove it. (Giardini Decl. ¶¶ 3-4 & Ex. A; Giardini Dep. 121:20-24.)

It was also the parties' practice to document any post-Sale agreements in formal, signed contracts. (*E.g.*, Giardini Decl. ¶ 4; Dep. Exs. 84, 143, attached as Exs. O and V to the First Chyz Decl.) It would have been wholly inconsistent with that practice to casually waive a multi-million dollar contract right in one paragraph of a letter marked "Without Prejudice" discussing a multitude of ongoing disputes. On the other hand, one can easily imagine that the parties would *not* draft a new agreement if they were simply implementing an (incorrect) interpretation of existing contracts, as they did here. That mistake is not a voluntary and intentional relinquishment of a known right, regardless of whether the parties dispute the proper application of Canadian law to the "Without Prejudice" designation on Giardini's letter.

4. Any waiver would not apply after January 2012

As explained in Weyerhaeuser's motion, even if the Court had a basis to find waiver, there is no basis on which to extend that waiver beyond January 2012, when Weyerhaeuser resumed tendering workers compensation claims to Domtar. (D.I. 51 at 15-16.) Weyerhaeuser did not intend to waive any contractual rights to claims it actually tendered, and those tendered claims are distinct from the separate, un-tendered claims that came before them. *See, e.g.*, *Price v. Wilmington Trust Co.*, 1995 WL 317017, *3 (Del. Ch. May 19, 1995) (each breach in a series of similar breaches is treated separately for purposes of the statute of limitations).

---

Cross Dep. 179:16-18, 180:4-6 ("Q: Okay. At the top of this letter, on the first page, it says 'without prejudice.' Do you know what that meant?" A: ". . . My understanding is, it means that it's not to be used against me, you know, if you say something along those lines."); Dagenais Dep. 170:8-10 ("A: 'Without prejudice' is something that you will put on the paper to – and make sure that you preserve your rights.").

Moreover, a "waiving party may retract [a] waiver by giving reasonable notice to the non-waiving party before that party has suffered prejudice or materially changed his position." *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 530 (Del. 2011). In its motion, Domtar identifies no prejudice it has suffered from Weyerhaeuser's mistake. (*See* D.I. 56 at 1-20.) This is because Domtar has not been prejudiced. To the contrary, Domtar experienced a multi-million dollar windfall. Weyerhaeuser identified that windfall in January 2012, and notified Domtar that Weyerhaeuser intended to enforce its contract rights going forward. Domtar cannot reasonably claim prejudice after that point.

**B. Weyerhaeuser's Claims Are Not Barred By Acquiescence**

1. Domtar did not plead acquiescence

Under Fed. R. Civ. P. 8(c)(1), a party "must" include "any avoidance or affirmative defense" in its responsive pleading. Acquiescence is an affirmative defense. *E.g., In re Celera Corp. Shareholder Litig.*, No. 6304-VCP, 2012 WL 1020471, at *13 (Del. Ch. 2011), *rev'd in part on other grounds by In re Celera Corp. Shareholder Litig.*, 59 A.3d 418 (Del. 2012). An affirmative defense is waived if not included in a responsive pleading, and waiver is particularly appropriate where a defense is raised for the first time after the close of discovery. *E.g., Jones v. Gardels*, No. Civ. A. 02-307-JJF, 2006 WL 37039, at *3 (D. Del. 2006). Fact discovery in this case has been closed for months, and Domtar made no mention of acquiescence in any of its papers until filing its motion. The Court should not consider Domtar's acquiescence defense.

2. Acquiescence is based on conduct, and does not apply here

As Domtar argues in its motion, acquiescence is based on a party's "action, or lack thereof." (D.I. 56 at 16.) Acquiescence may occur if a party has "full knowledge of his rights and material facts" and remains inactive for a considerable time in the face of an act, does something amounting to recognition of the complained of act, or acts in a manner that would

otherwise lead the other party to believe the act has been approved. *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998). Section 9.10 of the Contribution Agreement does not permit the parties to waive, amend, supplement, or modify its terms except in an express writing. Weyerhaeuser's mistaken conduct therefore cannot support Domtar's newly-raised acquiescence defense. *Id.* at 584 (in action for preliminary injunction, finding plaintiff was likely to defeat defendant's acquiescence defense because the parties' contract contained a provision requiring waivers to be made in writing).

3. Acquiescence requires full knowledge of one's rights, and does not apply here

Domtar argues acquiescence does not require conscious intent to approve an act (D.I. 56 at 16), but that does not mean Delaware courts ignore knowledge and intent when assessing acquiescence on the facts of any particular case.[6] The "intention and motivation" of the allegedly acquiescing party is "often" critical to the court's analysis. *Julin v. Julin*, 787 A.2d 82, 84 (Del. 2001) (application of acquiescence "often depend[s], as here, on an evaluation of the knowledge, intention and motivation of the acquiescing party"). And in all cases, a plaintiff alleged to have acquiesced must have had "full knowledge of his rights" such that the application of acquiescence is equitable on the facts of the case. *Cantor Fitzgerald*, 724 A.2d at 582; *see also Klassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (finding Klassen acquiesced to his removal as company CEO where he did "not claim that he lacked full knowledge of either his rights or the material facts"). For acquiescence to apply, a plaintiff must "(1) have full knowledge of his or her rights and all material facts; (2) possess a meaningful

[6] Delaware courts apply acquiescence in a variety of different contexts and in different ways, depending on the facts of the case. Delaware courts have likened acquiescence to waiver, *Cantor Fitzgerald*, 724 A.2d at 584 n.44 (explaining that acquiescence is a "species of waiver"), estoppel, Lehman Bros., 2014 WL 718430, at *9 (the "doctrine of acquiescence effectively works an estoppel"), and laches, *In re Celera Corp.*, 2012 WL 1020471, at *9 (acquiescence is "similar to the doctrine of laches").

choice in determining how to act; and (3) act voluntarily in a manner showing unequivocal approval of the challenged conduct." *In re Celera Corp.*, 2012 WL 1020471, *9 (citations and quotations omitted).

As discussed above, those factors are not present here. Anne Giardini approved conduct she mistakenly believed was consistent with the parties' contractual rights; it was not the case that she understood the parties' rights and nevertheless (and for no apparent reason) stood by while Weyerhaeuser paid millions of dollars of workers compensation claims that belonged to Domtar. She made a mistake, and a mistake will not support acquiescence. *E.g.*, *Davis v. Mitchell*, 628 A.2d 657, 660-61 (Me. 1993) (acquiescence to boundary line cannot result from a landowner's mistake about the placement of the boundary line); *accord Julin*, 787 A.2d at 84 (affirming application of acquiescence to plaintiff because trial court properly scrutinized the plaintiff's "intention and motivation" in acquiescing); *Balin v. Amerimar Realty Co.*, CIV. A. No. 12896, 1996 WL 684377, at *19-20 (finding claim of mistake "lack[ed] credibility," and applying acquiescence where party intentionally declined to enforce contract in order to benefit himself before attempting to enforce the contract in later circumstances where enforcing it would benefit him).

4. Domtar did not detrimentally rely on Weyerhaeuser's conduct, so acquiescence does not apply, and certainly does not apply after January 2012

Domtar also argues that detrimental reliance is unnecessary to show acquiescence (D.I. 56 at 16), but, again, that does not mean Delaware courts do not consider the existence of prejudice when assessing the applicability of acquiescence to any particular set of facts, *Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc.*, No. 8321-VCG, 2014 WL 718430, at *9-10, 12 (Del. Ch. 2014) (acquiescence applies where defendant relies on plaintiff's silence "to the defendant's detriment"). Here, Domtar has not been prejudiced by Weyerhaeuser's actions.

Domtar has benefitted from Weyerhaeuser's actions, and has no basis to complain that it would be unjustly harmed if forced now to honor its contractual obligations.[7]

At the very least, Domtar cannot contend that Weyerhaeuser acquiesced to Domtar's position after January 2012, when Weyerhaeuser resumed tendering claims. At that point, any acquiescence stopped, and Weyerhaeuser is permitted to enforce its contract rights from, at a minimum, that point forward. *See Amirsaleh*, 27 A.3d 522 at 530 (waivers can be retracted absent detrimental reliance); *Cantor Fitzgerald*, 724 A.2d at 584 n.44 (acquiescence is a species of waiver).

**C.**



[7] Waiver and acquiescence are both equitable defenses. Equitable defenses exist to promote fairness. *See Black's Law Dictionary* 241 (2d Pocket Ed. 2001) (defining "equity" as, among other things, "[f]airness" and "constituting what is fair and right"). Equity is not served by applying waiver or acquiescence on the facts of this case. Under this Court's statute of limitations ruling, Weyerhaeuser has already made almost $9 million in workers compensation payments it can never recover, and should never have made. (D.I. 54 ¶¶ 2-3.) Domtar has thus *benefitted* from Weyerhaeuser's mistake; it has not been *harmed* by it. And Weyerhaeuser has already paid a steep price for both its mistake and the time that passed before Weyerhaeuser ultimately determined it could not enforce its rights without suing Domtar.



[redacted]

**III. CONCLUSION**

The Court should deny Domtar's motion for summary judgment, and enter summary judgment for Weyerhaeuser. Domtar's affirmative defenses of waiver and acquiescence fail as a matter of law. Weyerhaeuser did not knowingly or intentionally waive its rights. It temporarily implemented Domtar's mistaken view of the relevant contracts, and Domtar has only benefitted (tremendously) from that mistake. Domtar cannot now claim it is forever excused from performing the contractual obligations it voluntarily assumed at the time of the Sale. The Court should enter judgment for Weyerhaeuser, order Domtar to assume all disputed workers compensation liability, and award Weyerhaeuser its damages.

October 13, 2015

**Redacted Version Filed: October 20, 2015**

OF COUNSEL:

Laurie Lootens Chyz, WSBA #14297
Michael J. Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
1221 Second Avenue, Suite 500
Seattle WA 98101-2925
(206) 623-1745
llc@hcmp.com;
mje@hcmp.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Attorneys for Plaintiff,
Weyerhaeuser Company

**IV.**