**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------------x

:

WEYERHAEUSER COMPANY, a Washington
corporation,

:

                                   Plaintiff,        :    C.A. No. 14-024-SLR

          v.                                         :    REDACTED
                                                          PUBLIC VERSION

DOMTAR CORPORATION, a Delaware corporation,          :
and DOMTAR PAPER COMPANY, LLC, a Delaware
limited liability company,                           :

                                   Defendants.       :

-------------------------------------------------------------------------x


**DEFENDANTS DOMTAR CORPORATION AND DOMTAR PAPER COMPANY, LLC's
ANSWERING BRIEF IN OPPOSITION TO
WEYERHAEUSER COMPANY'S MOTION FOR SUMMARY JUDGMENT**


OF COUNSEL:

Gary W. Kubek
Alex Ginsberg
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
gwkubek@debevoise.com
aginsber@debevoise.com

Dated: October 13, 2015

Gregory P. Williams (#2168)
Chad M. Shandler (#3796)
Katharine C. Lester (#5629)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Williams@rlf.com
Shandler@rlf.com
lester@rlf.com

*Attorneys for Defendants Domtar Corporation
and Domtar Paper Company, LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

COUNTER-STATEMENT OF FACTS ....................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 1

ARGUMENT ................................................................................................................................ 3

      A.     Weyerhaeuser's Waiver Was Voluntary and Intentional, and Is Not
             Excused By Any Purported Mistake. ...................................................................... 3

      B.     Weyerhaeuser's Statements and Conduct from 2008 Through 2011
             Confirm That Its November 2008 Letter Constituted a Voluntary,
             Intentional Waiver. ................................................................................................. 6

      C.     Weyerhaeuser Could Not, and Did Not, Withdraw Its Waiver in January
             2012 ......................................................................................................................... 9

      D.     Weyerhaeuser Cannot Claim That Its Waiver Was a Mistake While
             Withholding Documents Concerning Its Decision as Privileged. ........................ 11

      E.     The Undisputed Facts Also Establish Acquiescence by Weyerhaeuser, As
             to Which Weyerhaeuser's Intent is Not Relevant. ................................................ 13

      F.     Weyerhaeuser Is Not Entitled to Summary Judgment Because the Identity
             and Amounts of the Relevant Claims Remain in Dispute. ................................... 14

CONCLUSION ........................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

CASES

*Action Drug Co. v. R. Baylin Co.*,
    C.A. No. 9383, 1989 WL 69394 (Del. Ch. June 19, 1989) ............................................5

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
    27 A.3d 522 (Del. 2011) .........................................................................................9, 10

*Cantor Fitzgerald, L.P. v. Cantor*,
    724 A.2d 571 (Del. Ch. 1998)......................................................................................13

*Hanson v. Fid. Mut. Ben. Corp.*,
    13 A.2d 456 (Del. Super. Ct. 1940) .............................................................................9

*Harleysville Ins. Co. v. Church Ins. Co.*,
    892 A.2d 356 (Del. 2005) .............................................................................................9

*Harney v. Walden*,
    No. 10-200-JBC, 2012 WL 4329281 (E.D. Ky. Sept. 19, 2012)...................................6

*In re Blair*,
    18 B.R. 277 (Bankr. D.N.D. 1982) ...............................................................................6

*In re Givans Estate*,
    No. RW-74, 1993 WL 50316 (Del. Ch. Feb. 1, 1993)................................................10

*In re Marriage of Woods*,
    142 P.3d 1072 (Or. Ct. App. 2006)...............................................................................6

*Klaassen v. Allegro Dev. Corp.*,
    106 A.3d 1035 (Del. 2014) .........................................................................................13

*M-S.A. v. E-R.*,
    No. CN11-04380, 2013 WL 8290635 (Del. Fam. Ct. June 6, 2013)............................6

*Minnesota Mut. Fire & Cas. Co. v. Rudzinski*,
    347 N.W.2d 848 (Minn. Ct. App. 1984).......................................................................5

*Moore v. Travelers Indem. Ins. Co.*,
    408 A.2d 298 (Del. Super. Ct. 1979) ............................................................................5

## COUNTER-STATEMENT OF FACTS

Domtar refers to and incorporates by reference the Statement of Facts set forth in Domtar's Opening Brief in support of its motion for summary judgment.  D.I. 56 at 3–10 ("Domtar's Memorandum").[1]  Domtar also relies on the additional facts set forth below, which show that disputed issues of material fact prohibit the granting of Weyerhaeuser's motion.

After more than three years during which Weyerhaeuser invoiced Domtar only for workers compensation claims by Transferred Employees, in a manner consistent with Weyerhaeuser's written expression of agreement with Domtar's position in the November 26, 2008 letter from Anne Giardini to Zygmunt Jablonski, Weyerhaeuser began tendering some new workers compensation claims made by Non-Transferred Employees to Domtar in early 2012.  D.I. 56 at 6, 8–9.  Weyerhaeuser did not assert, however, that it had previously made a mistake and did not contend that Domtar was responsible for amounts paid for claims filed by other Non-Transferred Employees prior to these new claims.  *See, e.g.*, D.I. 57, Ex. 29.  Indeed, Weyerhaeuser did not offer any reason for its changed position or even acknowledge that its position had changed.  Weyerhaeuser never asserted that Giardini's letter, its internal accounting change to reflect that claims by Non-Transferred Employees were Weyerhaeuser's responsibility or its payment of those claims for all periods through 2011 was a mistake until it raised that argument in its Opening Brief in support of its motion for summary judgment, D.I. 51 (the "Weyerhaeuser Brief").

## SUMMARY OF ARGUMENT

Weyerhaeuser fails to support – legally or factually – its argument that its intentional and voluntary relinquishment of its previously asserted right to hold Domtar responsible for workers

---

[1]     Terms defined in Domtar's Memorandum are used herein with the same meaning.

1

compensation claims by Non-Transferred Employees was not a waiver because it was a "mistake." Weyerhaeuser knew of its claimed contractual right to impose that liability on Domtar, having set forth its argument in correspondence between the parties. But following the parties' September 2008 meeting to discuss this and other disputed issues, Weyerhaeuser made a conscious decision, reflected not merely in Anne Giardini's November 26, 2008 letter but in a formal accounting change made one month earlier, to give up its position and to accept the liability. Weyerhaeuser thereafter acted in accordance with that decision, re-invoicing Domtar to exclude claims by Non-Transferred Employees and charging Domtar only for claims by Transferred Employees, not just for "a period of time" (as Weyerhaeuser calls it, D.I. 51 at 2), but for more than three years. The evidence shows that Weyerhaeuser's waiver was not merely a "mistake" by Giardini, who in any event was Weyerhaeuser's lead negotiator and a lawyer, but a considered decision in which numerous legal, financial and human resources personnel participated.

Weyerhaeuser's argument that it retracted its waiver, more than three years later, is also unavailing. Weyerhaeuser did not have any right to retract the waiver, especially after the parties had negotiated and resolved numerous other disputed issues while Domtar operated with the knowledge that Weyerhaeuser had accepted responsibility for the substantial workers compensation liability.

Lastly, even if Weyerhaeuser could be found not to have waived its claim, it still would not be entitled to summary judgment because there are material factual issues as to which claims would be Domtar's responsibility and which were retained by Weyerhaeuser as a result of the parties' separate allocation of responsibility for asbestos-related claims under the Agreements.

## ARGUMENT

The Weyerhaeuser Brief asserts several arguments in an attempt to rebut Domtar's affirmative defense that Weyerhaeuser waived any right it had to require Domtar to pay workers compensation claims of Non-Transferred Employees.  None of those arguments has any merit.

### A.   Weyerhaeuser's Waiver Was Voluntary and Intentional, and Is Not Excused By Any Purported Mistake.

Weyerhaeuser argues first that "[n]o waiver occurred here because this dispute was caused by Domtar's mistaken interpretation of the Sale contracts and Giardini's temporary agreement with that mistaken interpretation."  D.I. 51 at 12.  The undisputed facts demonstrate, however, that Weyerhaeuser's agreement with Domtar's position, which was conveyed by Giardini and confirmed by Weyerhaeuser's subsequent conduct, was based on neither a mistake of law nor a mistake of fact that negated Weyerhaeuser's waiver of whatever rights it had under the Agreements to require Domtar to bear the expense of workers compensation claims by Non-Transferred Employees.  Rather, as set forth in detail in Domtar's Memorandum and herein, Weyerhaeuser knowingly and voluntarily waived any right to reimbursement from Domtar and confirmed that waiver by acting in accordance with it for more than three years.

It is undisputed that after the Sale the parties disagreed about the application of some terms of the Agreements, of which the responsibility for workers compensation claims by Non-Transferred Employees was only one.  The parties engaged in an exchange of correspondence, identifying and setting forth their positions with respect to these issues, and established an agenda for the meeting in Montreal on September 11, 2008, to discuss the remaining disputes.  *See* D.I. 57, Exs. 10–12.  At the meeting, Domtar presented its position that Domtar should be liable only for the workers compensation claims of Transferred Employees.  Although Weyerhaeuser had explained its initial position asserting Domtar's responsibility for claims by

3

Non-Transferred Employees in writing on several occasions beginning in mid-2007, *see, e.g.*, D.I. 57, Ex. 5 at 10206, including in a letter from Giardini several months before the meeting, D.I. 57, Ex. 10 at 11326–27, Patrick Lane of Weyerhaeuser testified that "we didn't have a counter that said why they were wrong."  D.I. 57, Ex. 14, 48:21–49:10.  Weyerhaeuser said that it needed to discuss the issue further internally, D.I. 57, Ex. 13 at 11857_0002–0003; D.I. 57, Ex. 17, 46:23–49:19, and Giardini thereafter communicated Weyerhaeuser's agreement with Domtar's position in her November 2008 letter, thereby waiving Weyerhaeuser's position in writing.  D.I. 57, Ex. 21 at 22326.  Weyerhaeuser acted consistently with that waiver for more than three years.  *See* D.I. 56 at 7–8, 12–16.

As noted above, Weyerhaeuser did not assert that its prior agreement with Domtar's position was a "mistake" when it began tendering the defense of new workers compensation claims by Non-Transferred Employees in 2012.  It is only now, nearly seven years after Giardini sent her letter, that Weyerhaeuser contends that there was a "mistake," consisting of "Giardini's temporary agreement with [Domtar's] mistaken interpretation" of the Agreements.  D.I. 51 at 12.  But Weyerhaeuser's waiver was not simply the mistaken act of a single employee (who was the president and former general counsel of Weyerhaeuser's Canadian subsidiary).  Rather, Weyerhaeuser's waiver was implemented through continuing, conscious actions by Weyerhaeuser's finance, human relations and legal departments over a period of more than three years, which were contrary to Weyerhaeuser's original, fully articulated position that these claims were Domtar's responsibility.  Weyerhaeuser offers no support for its contention that a

4

sophisticated party's well-considered, but allegedly mistaken, decision with respect to the application of a contract can constitute a "mistake" that negates its waiver of its rights.[2]

Weyerhaeuser cites only one Delaware case, *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298 (Del. Super. Ct. 1979), to support its claim of mistake.  In that case, an insurance carrier argued that it had paid benefits under an allegedly lapsed auto insurance policy by mistake, pointing to its issuance of a new policy two days before it made the payment, which would have been unnecessary if the policy had not lapsed.  The court found that disputed facts relating to these events prevented the entry of summary judgment on the issue of whether the insurer intended to waive the alleged lapse or had made the payment by mistake.  *Id*. at 301–02. Weyerhaeuser does not point to any facts as to which it had a mistaken understanding, and this case does not involve just one allegedly mistaken payment.  As demonstrated in Domtar's Memorandum, Weyerhaeuser was fully aware of the terms of the Agreements and had previously argued for more than a year after the Sale that Domtar was responsible for the workers compensation payments before changing its view and agreeing with Domtar's position.

Similarly, Weyerhaeuser does not point to any mistake of law such as was held to support a claim of mistake in the non-Delaware cases it cites.[3]  *See Minnesota Mut. Fire & Cas. Co. v.*

---

[2]     Weyerhaeuser misstates the holding of *Action Drug Co. v. R. Baylin Co.*, C.A. No. 9383, 1989 WL 69394 (Del. Ch. June 19, 1989), when it asserts that "waiver is a disfavored defense in Delaware." D.I. 51 at 11.  The court in *Action Drug* invoked Delaware's "strong public policy in favor of arbitration" when it rejected an argument that the plaintiff had "waived its right to demand arbitration" under the parties' contract, noting that the "waiver defense is disfavored" in that context.  1989 WL 69394 at *3–5.  The Court of Chancery did not purport to make any pronouncement about waiver of contractual rights generally, but rather stated that "[t]he same policy reasons that support an expansive reading of the arbitration clause militate against a finding of waiver except in the most compelling case." *Id*. at *4.

[3]     Weyerhaeuser does not cite any case in which a Delaware court found that a mistake of law relieved a party of its waiver of a contractual right.

*Rudzinski*, 347 N.W.2d 848 (Minn. Ct. App. 1984) (parties made mutual mistake as to application of statute which provided that injury from use of motorcycle did not arise out of use of a motor vehicle and policy endorsement that incorporated that exclusion); *In re Blair*, 18 B.R. 277 (Bankr. D.N.D. 1982) (creditor did not waive claim against debtor's household goods during post-hearing "hallway conference" where all parties mistakenly believed such goods were exempt property under bankruptcy law); *In re Marriage of Woods*, 142 P.3d 1072 (Or. Ct. App. 2006) (mutual mistake as to provision of statute governing appeal of arbitration award). Weyerhaeuser cites no case in which a sophisticated party's considered decision to resolve a dispute about the application of a contract has been held to constitute a "mistake" that vitiated the party's waiver of its rights under the disputed provision.

Weyerhaeuser may regret agreeing with Domtar's position that Domtar was liable only for Transferred Employees, but regret is not a mistake. *See M-S.A. v. E-R.*, No. CN11-04380, 2013 WL 8290635, at *3 (Del. Fam. Ct. June 6, 2013) ("While [Plaintiff] regrets signing the Agreement, there was no evidence to suggest [Plaintiff] made a mistake when the parties' agreement was made final."). *See also Harney v. Walden*, No. 10-200-JBC, 2012 WL 4329281, at *1 (E.D. Ky. Sept. 19, 2012) ("[r]egrets that things did not work out the way one had planned, however, do not make the decision to enter into a settlement agreement a 'mistake'"). Weyerhaeuser is not entitled to summary judgment, because the undisputed facts do not show that its waiver of any right to payment of claims by Non-Transferred Employees was a mistake.

**B.     Weyerhaeuser's Statements and Conduct from 2008 Through 2011 Confirm That Its November 2008 Letter Constituted a Voluntary, Intentional Waiver.**

Weyerhaeuser makes two other arguments in response to Domtar's waiver defense: (1) waiver cannot be inferred from Weyerhaeuser's course of conduct from 2008 through the

beginning of 2012; and (2) Giardini did not intend for Domtar to rely on her November 2008

letter.  Neither argument has merit.

          1.      Domtar Does Not Contend That Weyerhaeuser's
                    Conduct, in Itself, Constituted a Waiver.

Weyerhaeuser's position is not supported by its argument that the Agreements "do not

permit a party to waive its rights by engaging in conduct inconsistent with its rights."  D.I. 51 at

13.  Domtar does not contend that Weyerhaeuser's conduct in itself waived its rights.  Rather,

Weyerhaeuser's years of continuing conduct confirm that Giardini's letter constituted a waiver,

and not just some mistaken assertion of a non-binding proposal.  Giardini's letter satisfies the

requirement of Section 9.10 of the Contribution Agreement that no provision of the Agreements

"shall be deemed waived, amended, supplemented or modified" unless the waiver "is in writing

and signed" by an authorized representative of the waiving party.  D.I. 14, Ex. A.

          2.      Giardini's Letter Is Binding on Weyerhaeuser.

Giardini's November 2008 letter includes a clear and unambiguous statement of

agreement with Domtar's position: "In fact, we are all agreed that US workers compensation

liability went to Domtar only for employees who became able to work in some capacity at

Domtar."  D.I. 57, Ex. 21 at 22326.  Weyerhaeuser does not dispute that Giardini was authorized

to speak on its behalf with respect to this issue.  Rather, Weyerhaeuser argues that Giardini

intended that the letter was "for negotiation purposes only" and that "the recipient could not rely

on the letter unless it was later confirmed by a formal written agreement."  D.I. 51 at 14.  The

letter itself contains neither of those caveats, but Weyerhaeuser contends that such limitations

should be inferred from the legend "Without Prejudice" on the first page of the letter.  D.I. 57,

Ex. 21 at 22324, D.I. 51 at 14.  However, Giardini's express statement of Weyerhaeuser's

agreement with Domtar is not the kind of settlement proposal or communication that can be

privileged against the recipient's reliance as a result of the indiscriminate use of the term

"without prejudice."

Weyerhaeuser asks this Court to interpret the letter based on a boilerplate label rather

than its substance, and in a manner at odds with both that substance and Weyerhaeuser's

subsequent course of conduct.  As explained in Domtar's Memorandum, the use of "without

prejudice" by Canadian lawyers such as Giardini, like the invocation of Fed. R. Evid. 408 by an

American lawyer, must be evaluated in light of each communication's purpose and context.

Here, the portions of Giardini's letter that communicate Weyerhaeuser's positions or proposals

with respect to several then-unresolved issues could properly be privileged as part of a settlement

negotiation, but her statements with respect to workers compensation liabilities did not merely

convey a negotiating position but rather expressed Weyerhaeuser's explicit and unequivocal

agreement with Domtar's position.  D.I. 56 at 17–19.

Furthermore, Weyerhaeuser's course of conduct from September 2008 through January

2012 confirms that the November 2008 letter constituted an intentional waiver of

Weyerhaeuser's prior position, rather than a privileged expression of a negotiating position.  In

October 2008, after the Montreal meeting but a month *before* Giardini sent her letter,

Weyerhaeuser formally adjusted its internal accounting records to reduce the workers

compensation liability charged against the Sale by about $9.2 million and to decrease the

outstanding workers compensation receivable balance from Domtar by $3.4 million, because "a

significant number of claims will remain with Weyerhaeuser."  D.I. 57, Ex. 25 at 19048–49.

Thereafter, for more than three years, Weyerhaeuser invoiced Domtar only for claims relating to

Transferred Employees and tendered for defense by Domtar a series of workers compensation

claims, none of which pertained to Non-Transferred Employees.  D.I. 57, Ex. 14, 50:16–52:12;

D.I. 57, Ex. 22, 68:11–75:8; D.I. 57, Ex. 23.  These actions, which are consistent with and confirm the agreement communicated by Giardini in her November 2008 letter, demonstrate that it was not a mistake, but a conscious, voluntary relinquishment of Weyerhaeuser's prior position.

### C. Weyerhaeuser Could Not, and Did Not, Withdraw Its Waiver in January 2012.

Weyerhaeuser's argument that it "retracted" its November 2008 waiver in early 2012 when Conrad Smucker sent a letter tendering the workers compensation claim of Robert Brown Dickerson, a Non-Transferred Employee, to Domtar for defense fails for three reasons.  *First*, Weyerhaeuser did not have the right to retract its waiver.  *Second*, even when such a right exists, it must be exercised before the other party has suffered prejudice or changed its position, which Weyerhaeuser did not do.  *Third*, Weyerhaeuser did not provide "reasonable notice" of its intention to retract its waiver until July 2013.  Under these circumstances, Weyerhaeuser is not entitled to summary judgment.

Weyerhaeuser relies solely on *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 530 (Del. 2011), to argue that, even if it did waive its right to receive reimbursement for workers' compensation claims relating to former employees, it could—three years later— retract that waiver.  D.I. 51 at 15.  But the court in *Amirsaleh* found that the defendant had not retracted its waiver, and thus the statement in *Amirsaleh* that a party may retract a waiver by giving reasonable notice before the other party has suffered prejudice or change its position is dictum, which is inconsistent with several other Delaware decisions.  As the Delaware Supreme Court stated in *Harleysville Ins. Co. v. Church Ins. Co.*, 892 A.2d 356, 364 (Del. 2005), "Once a right is waived, it is gone forever."  *See also Hanson v. Fid. Mut. Ben. Corp.*, 13 A.2d 456, 460 (Del. Super. Ct. 1940) ("Generally where one in the possession of a right has waived it, he is precluded from afterwards claiming anything by reason of it; and when once waived the right is

9

gone forever."); *In re Givans Estate*, No. RW-74, 1993 WL 50316, at *1 (Del. Ch. Feb. 1, 1993)

("A right, once validly waived, cannot be reclaimed.")  Weyerhaeuser thus did not have a right to

withdraw unilaterally its unequivocal waiver, after abiding by it for more than three years.

Even if a party could, in some circumstances, retract a waiver, such a retraction must

occur before the other party "has suffered prejudice or materially changed his position."  *See*

*Amirsaleh*, 27 A.3d at 530.  Weyerhaeuser is wrong when it asserts that Domtar would suffer no

prejudice if Weyerhaeuser is allowed to retract its waiver.  D.I. 51 at 15.  The dispute over

workers compensation claims was only one of numerous disputes arising out of the Sale, as

reflected in the November 2008 letter and other correspondence, *see* D.I. 57, Exs. 10–12, 28.

Domtar's willingness to compromise other matters, and the terms on which it agreed to do so,

almost certainly would have been different if Weyerhaeuser had said it was not accepting

responsibility for claims by Non-Transferred Employees.  *See* Declaration of Zygmunt Jablonski,

sworn to October 13, 2015.  Domtar would suffer prejudice if Weyerhaeuser is allowed to retract

its waiver and to hold Domtar responsible for millions of dollars of claims by Non-Transferred

Employees after the parties have negotiated and resolved numerous other issues arising from the

Sale.

Moreover, a party attempting to retract its waiver must provide "reasonable notice" of its

intention, *Amirsaleh*, 27 A.3d at 530–31, but Weyerhaeuser failed to provide such notice.

Weyerhaeuser relies on an email chain spanning January 31, 2012 through February 23, 2012

between Smucker and Brzezinski, D.I. 51 at 8, which addressed only the responsibility for one

claim filed by one employee.  *See* D.I. 53, Exs. P, Q.  Smucker did not acknowledge that he was

advancing a position inconsistent with the agreement Weyerhaeuser had confirmed in Giardini's

November 26, 2008 letter and complied with for more than three years, nor did he assert that

10

Weyerhaeuser was repudiating that agreement.  Instead, Weyerhaeuser tendered specific new cases to Domtar on an ad-hoc basis.

It was not until July 2013—some eighteen months later—that Weyerhaeuser demanded payment from Domtar for all Non-Transferred Employee claims.  D.I. 57, Ex. 32. Weyerhaeuser's assertion that Domtar "never claimed a waiver until the Court rejected Domtar's contract analysis," D.I. 51 at 13–14, is simply wrong.  Domtar expressly raised Giardini's agreement that Domtar was responsible only for claims by Transferred Employees and the parties' subsequent conduct "pursuant to this common understanding" in its response to Smucker's July 2013 letter, when Weyerhaeuser first asserted that it was not bound by Giardini's November 2008 letter.  *See* D.I. 57, Ex. 33 at 21236–37.

### D.    Weyerhaeuser Cannot Claim That Its Waiver Was a Mistake While Withholding Documents Concerning Its Decision as Privileged.

Weyerhaeuser withheld or redacted on grounds of attorney-client privilege numerous documents containing communications among Giardini and Lane, its two representatives at the September 2008 meeting in Montreal, and other members of Weyerhaeuser's financial, human resources and legal departments, including at least one email from Giardini to Weyerhaeuser's general counsel, Sandy McDade.  It seems apparent from the timing of these documents (in October-November 2008 and late 2011 to early 2012) and the unredacted portions of some of the documents that they relate to Weyerhaeuser's decision to accept responsibility for workers compensation claims by Non-Transferred Employees or its subsequent decision to seek to impose that responsibility on Domtar.  Weyerhaeuser should not be permitted to rely on the argument that its waiver of rights with respect to payment of those claims was a mistake made by Giardini – who Weyerhaeuser attempts to portray as acting on her own in making "her mistake,"

11

D.I. 51 at 12 – while at the same time refusing to allow Domtar and the Court to examine Weyerhaeuser's decision-making process.

Weyerhaeuser's redactions on grounds of privilege include a key paragraph of the document that explained the accounting change described above, which presumably explains the legal basis for Weyerhaeuser's decision to abandon its prior position, review "all the Workers Compensation (WC) claims as of February 2007 . . . to determine whether the claimants transferred to Domtar at the close of the transaction" and make the accounting changes.  D.I. 57, Ex. 25 at 19049.  Weyerhaeuser also redacted, among other documents, internal communications among Giardini, Lane and others with subject lines of "Workers Compensation Claims Review PLYMOUTH," *see* Declaration of Gary W. Kubek, sworn to October 13, 2015 ("Kubek Decl."), Ex. 1, during the weeks before Giardini sent her letter, and "Domtar WC Claims Details Mar2007-Feb2009," *see* Kubek Decl. Ex. 2, relating to Weyerhaeuser's re-invoicing of Domtar only for claims by Transferred Employees.[4]  In addition, Weyerhaeuser redacted documents from the periods shortly before and after January 2012, when it reversed its position and began to tender claims by Non-Transferred Employees, which may relate to that decision.  *See, e.g.*, Kubek Decl. Ex. 3; Kubek Decl. Ex. 4.[5]

Weyerhaeuser should be barred from asserting that its waiver was a mistake because of its refusal to produce these and other allegedly privileged documents that almost certainly bear on that contention.  In the alternative, Weyerhaeuser should be ordered to produce unredacted versions of all documents withheld as privileged (in whole or in part) that relate to its decision to

---

[4]    Weyerhaeuser also "clawed back" in their entirety previously produced documents from this time period, including, among others, WEY00019278 and WEY00022158.

[5]    In one of these documents, a Weyerhaeuser employee, Mylee Powell, intriguingly says, "I just wanted to ask the question to be sure.  You know . . . so it's not five years later and I'm realizing I could have charged Domtar for these groups, too!"  Kubek Decl. Ex. 3 at 19703.

agree with Domtar's position in the fall of 2008 or its decision in or about January 2012 to begin tendering and seeking reimbursement for claims by Non-Transferred Employees.

> ### E.     The Undisputed Facts Also Establish Acquiescence by Weyerhaeuser, As to Which Weyerhaeuser's Intent is Not Relevant.

Even if the undisputed facts did not demonstrate Weyerhaeuser's intentional waiver, Weyerhaeuser's motion for summary judgment should be denied (and Domtar's should be granted) because Weyerhaeuser acquiesced to its responsibility for Non-Transferred Employee claims. As explained in Domtar's Memorandum, D.I. 56 at 16–17, the defense of acquiescence does not require proof of a party's intent to waive its rights: "For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice." *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014). Rather, acquiescence "arises where a complainant has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998) (quoting *NTC Grp., Inc. v. W. Point-Pepperell, Inc.*, CIV. A. No. 10665, 1990 WL 143842, at *5 (Del. Ch. Sept. 26, 1990)). Giardini's November 26, 2008 letter and three years of conduct by Weyerhaeuser consistent with that letter, including its payment of claims by Non-Transferred Employees without seeking reimbursement from Domtar, demonstrated Weyerhaeuser's acceptance of Domtar's position that workers compensation liabilities relating to those Non-Transferred Employees remained with Weyerhaeuser following the Sale.[6]

---

[6]     As explained in Domtar's Memorandum, D.I. 56 at 16 n.8, the Court should consider Domtar's defense of acquiescence (and the pleadings should be deemed so amended) even

**F.      Weyerhaeuser Is Not Entitled to Summary Judgment Because the Identity and Amounts of the Relevant Claims Remain in Dispute.**

Weyerhaeuser asks this Court to grant summary judgment on liability and award damages of $1,088,860.69.[7]  D.I. 51 at 17.  Even if Weyerhaeuser had established that it has not waived its claim, it would not be entitled to summary judgment on either liability or damages, because there remains a dispute as to the identity of the workers compensation claims for which Domtar would be liable.  Under the Agreements, Weyerhaeuser expressly retained liability for certain asbestos-related claims.  Weyerhaeuser has not pointed to, and the record does not contain, evidence to establish which claims are asbestos-related and non-asbestos-related, much less which asbestos-related claims were not retained by Weyerhaeuser.

Section 2.03(b)(viii) of the Contribution Agreement provides that Weyerhaeuser retained "all Liabilities to the extent arising out of (x) any exposure to asbestos or asbestos-containing materials present in products formerly manufactured at facilities now or formerly owned [by Weyerhaeuser] or (y) the pre-closing manufacture of these products at such facilities." D.I. 57, Ex. 34. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

though it was not separately asserted in the Answer because Weyerhaeuser has been on notice of Domtar's position, or Domtar should be permitted to amend its Answer to be consistent with the facts learned in discovery.

[7]    The total damages sought by Weyerhaeuser include $21,581.68 for sums expended for two litigated cases.  D.I. 51 at 10.  Weyerhaeuser claims that "Domtar asserts that these lawsuits are part of the parties' ongoing workers compensation dispute (even though they are not formal workers compensation claims) and has denied responsibility for those lawsuits on the same basis it denies liability for workers compensation claims."  *Id.*  Domtar has denied responsibility for these lawsuits but has never agreed that liability for these lawsuits is at issue in this transaction.  Litigation claims by Non-Transferred Employees are, by definition, not workers compensation claims and thus are not within the scope of Weyerhaeuser's Complaint, which asserts claims only with respect to "workers compensation claims."  D.I. 1, ¶¶ 22, 25, 38, 40, 41, 44, 46, 49–57.



Thus, even if Weyerhaeuser had not waived its claim, there remain disputed issues of material fact as to the claims for which Domtar would be responsible, which would preclude granting summary judgment in favor of Weyerhaeuser.

_____

[8]

## <u>CONCLUSION</u>

For the foregoing reasons, Domtar respectfully requests that the Court deny

Weyerhaeuser's Motion for Summary Judgment in its entirety.

OF COUNSEL:                                    /s/ Chad M. Shandler
                                               Gregory P. Williams (#2168)
Gary W. Kubek                                  Chad M. Shandler (#3796)
Alex Ginsberg                                  Katharine C. Lester (#5629)
DEBEVOISE & PLIMPTON LLP                       Richards, Layton & Finger, P.A.
919 Third Avenue                               One Rodney Square
New York, New York 10022                       920 N. King Street
(212) 909-6000                                 Wilmington, DE 19801
gwkubek@debevoise.com                          (302) 651-7700
aginsber@debevoise.com                         williams@rlf.com
                                               shandler@rlf.com
                                               lester@rlf.com

Dated: October 13, 2015                        *Attorneys for Defendants Domtar Corporation
                                               and Domtar Paper Company, LLC*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2015, I caused true and correct copies of the foregoing document to be filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following, and further certify that a copy of the foregoing document has also been served by electronic mail on the following:

Stephen B. Brauerman (#4952)  
Evan T. Miller (#5364)  
Bayard, P.A.  
222 Delaware Avenue, Suite 900  
Wilmington, DE  19899  
(302) 655-5000  
sbrauerman@bayardlaw.com  
emiller@bayardlaw.com

Laurie Lootens Chyz  
Michael J. Ewart  
Hillis Clark Martin & Peterson P.S.  
1221 Second Avenue, Suite 500  
Seattle, WA 98101-2925  
(206) 623-1745  
llc@hcmp.com  
mje@hcmp.com

*/s/ Chad M. Shandler*  
Chad M. Shandler (#3796)